[Civ. No. 53744. Second Dist., Div. Five. Dec. 22, 1978.]

JOHNS-MANVILLE PRODUCTS CORPORATION,
Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and
ROBERT CAREY, Respondents.

**COUNSEL**

Jones, Nelson, Endres & Sisk and James S. Evidon for Petitioner.

Schwartz, Steinsapir, Dohrmann & Krepack, Mark Edelstein and Salvador R. Baca for Respondents.

**OPINION**

KAUS, P. J.—Petitioner Johns-Manville Products Corporation (Johns-Manville) contends the appeals board[1] erred in: (1) awarding the injured employee further medical care for his industrial back condition; (2) failing to properly "apportion" the injured employee's lung disability to his prior back disability, and (3) refusing to refer the injured employee to an independent medical examiner on medical issues pertaining to the lung disability.

We hold on the question of further medical treatment for the back condition that Johns-Manville is precluded from raising the issue because it failed to raise it in its petition for reconsideration filed with the Board. On the question of "apportionment" we have determined that the appeals board failed to consider the question and accordingly the matter

---

[1] We utilize the term appeals board to refer to action by either the workers' compensation judge or the Commissioners of the Workers' Compensation Appeals Board and utilize the term Board to refer only to the actions of the commissioners.

must be remanded for further consideration by the appeals board. As to the appointment of an independent medical examiner, as such action by the appeals board is a matter left to its sound discretion and we cannot say that the discretion was abused, we do not disturb its action.

I

## Proceeding Before the Appeals Board

Respondent Robert Carey has sustained two industrial injuries while employed by Johns-Manville. The first was a back injury which occurred on February 12, 1974. The second was an occupational injury to Carey's lungs during the period April 23, 1957, through April 20, 1976.

The workers' compensation judge found that the back injury became permanent and stationary on January 8, 1976, and that the back injury resulted in the following factors of disability which were referred to the permanent disability rating specialist for evaluation:

"1. Constant slight pain in the low back, progressively increasing to moderate, to and including severe, on lifting over 25-30 pounds, repetitive motions of stooping, bending, lifting.

"2. Low back disability precluding heavy lifting over 25-30 pounds; or repetitive motions of bending, or stooping, or lifting higher weights."

Based upon these factors of disability for the back injury, the rating specialist recommended a 25 percent standard rating which adjusted for age and occupation to a 26 percent disability rating. (See Lab. Code, § 4660, subd. (a)). In accord with that recommendation, the trial judge issued an award of 26 percent permanent disability. The award also provided Carey with further medical treatment for his back condition.

As to the lung condition, Carey obtained a medical consultation from James Dahlgren, M.D. In his report of June 21, 1976, Dr. Dahlgren noted, among other ailments, Carey was suffering from asbestosis as the result of his employment at Johns-Manville. As to permanent disability, Dr. Dahlgren then thought that the *combination* of all of Carey's medical conditions rendered Carey permanently totally disabled: "This man is

permanently and totally disabled from working in the competitive labor market due to multiple problems including marked *lung scarring, bad back, pre-malignant changes on his sputum test and enlarged prostate with urinary symptoms.* Future medical care will be extensive and life long. There's no apportionment for his permanent total disability as it is entirely *a result of industrial factors.*" (Italics added.)

In a follow-up report dated November 29, 1976, Dr. Dahlgren noted a "progressive decline" in Carey's pulmonary lung function because of progressing asbestosis. Dr. Dahlgren then stated that Carey is totally and permanently disabled due to industrial asbestosis. Amplifying this view in his report of May 20, 1977, Dr. Dahlgren stated that Carey "would be permanently and totally disabled from work in the competitive labor market on the basis of his pulmonary disease alone."

Johns-Manville obtained a medical consultation from Alvin Markovitz, M.D. In his report of January 4, 1977, Dr. Markovitz agreed that Carey had asbestosis; but as to permanent disability, Dr. Markovitz did not entirely agree with Dr. Dahlgren, stating: "[Carey] has, in my opinion, a limitation to between sedentary and semisedentary work on the basis of his pulmonary problems alone. It may be that his orthopedic problem, his back problem in other words, may further limit him, but this would be the subject for orthopedists to ascertain. The patient, as far as his lung problem is concerned, is permanent and stationary and will require medication and treatment for an indefinite period of time."

The workers' compensation judge found that the lung condition became permanent and stationary on June 21, 1976, and that Carey was "disabled for any kind of employment in the competitive labor market by his industrial lung problem." The judge framed no factors of permanent disability for referral to the rating specialist for evaluation but found that as the lung disability alone resulted in total (100 percent) permanent disability Carey was entitled to a permanent disability award in the lung case of $119 per week for the rest of his life. (See Lab. Code, § 4659, subd. (b).)

As stated in the opinion on decision, the judge based the finding of total permanent disability on Dr. Dahlgren's evaluations which revealed that Carey had severe asbestosis which was getting worse.

The judge refused to "apportion" any of the lung disability to the back

disability. In his report on Johns-Manville's petition for reconsideration (hereinafter Report) the judge stated in part:

"The rule that each injury causing permanent disability must be rated apart from prior disability applies whether the result may be a disability percentage which, together with the prior rating, exceeds 100 percent.

"·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·   ·

"The test [in apportioning the lung disability to the back disability] is whether or not any of the factors of disability in the back case overlap in the lung case. In this case there is no overlapping of the factors of disability in the back and lung cases. . . . Dr. Markovitz gives his opinion that [Carey] is restricted to sedentary or semi-sedentary work. He gives no basis for this opinion, therefore the opinion is entitled to no weight. . . ."

In the Report the judge also stated why she had denied Johns-Manville's motion to refer Carey to an independent medical examiner for the lung condition: ". . . Referral to an Independent Medical Examiner is discretionary on the part of the trier of fact or judge. There is no basis for further referral in this case since Dr. Markovitz gave no basis for his opinion, which is entitled to no weight. Even had Dr. Markovitz given the basis for his opinion, this record would still show no basis in support of the claim of non-referral to an Independent Medical Examiner. This record is complete and no further medical evaluations are required to support the finding of 100% permanent disability in this case."

Johns-Manville sought reconsideration by the Board on the grounds that (1) the trial judge had failed to apportion the lung disability to the back disability, (2) the judge erred in not referring Carey to an independent medical examiner with regard to the lung condition, and (3) by failing to state the grounds for her decision in her opinion on decision, the judge failed to comply with Labor Code section 5313.[2] In its petition for reconsideration, Johns-Manville did not argue that the award of future medical care for the back was in error.

---

[2]Johns-Manville does not renew this contention before this court. Accordingly, we express no view on such contention.

The Board initially granted reconsideration to study the matter and to await appellate action on another case.[3] Thereafter, in a two-to-one panel decision, the Board affirmed the trial judge's decision. The majority stated on the question of apportionment: "Where dealing with successive injuries, the issue of apportionment between said injuries is based upon whether 'the second injury decreases the employee's earning capacity or his ability to compete in the open labor market in the same manner as the first injury.' (*Mercier* v. *WCAB,* 16 Cal.3d 711, 41 CCC 205.) In the present case the injury to the back and the subsequent impairment of the lungs obviously involve abnormalities of separate portions of the anatomy. Further, the Board believes that the two conditions impose separate limitations on [Carey's] capacity to work. The back disability has resulted in a preclusion from certain described activities such as lifting over certain weights or repetitive motions of the back such as bending. The lung disability, on the other hand, affects not only [Carey's] stamina or exercise tolerance in performing any activities, but also has resulted in such other factors such as nausea and substernal bleeding when exposed to smog. Thus, the lung condition itself does not preclude the activities impaired by the back condition, nor does the back condition itself affect [Carey's] stamina or nausea and substernal bleeding. Accordingly, the Board is persuaded that these conditions are separate and individual abnormalities that do *not* affect [Carey's] ability to compete in the open labor market in the same manner."

The dissent felt that the back and lung disabilities did overlap: "It is . . . obvious that the factors of disability relating to the back injury completely overlapped with the disability described by Doctor Dahlgren in his November of 1976 report. The 26% permanent disability rating for the back injury was based on a preclusion from heavy lifting over 25 to 30 pounds, or repetitive motions of bending, stooping or lifting higher weights. The clear implication from Doctor Dahlgren's report of November of 1976, is that the disability assigned by Doctor Dahlgren is due to the decreased exercise tolerance of the applicant. It is obvious that the second injury herein decreased the applicant's earning capacity or his ability to compete in the open labor market in the same manner as the first injury in that the disability due to the lung condition precluded the applicant from the same activities which the back injury precluded the applicant from doing.

[3]After the appellate court issued its opinion, the case was found to be irrelevant.

"I realize that the majority's decision is motivated, at least in part, by the reduction in the applicant's life pension which would result if the disabilities due to the back injury and lung injury are found to overlap. . . ."

## II

### *Contentions*

Before this court, Johns-Manville contends the appeals board erred in (1) awarding Carey further medical care for his back injury, (2) not apportioning the lung disability to the back disability, and (3) in not appointing an independent medical examiner for the lung problem.

## III

### *Discussion*

#### A. *Award of Further Medical Care*

Johns-Manville contends that there is no substantial evidence to support an award of further medical care to Carey for his back condition. As Johns-Manville did not raise this issue in its petition for reconsideration, it may not raise the issue for the first time on a petition for writ of review. (Lab. Code, § 5904; *Cedillo v. Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 450, 456 [96 Cal.Rptr. 471, 487 P.2d 1039].)

#### B. *Apportionment*

Here we deal with the question of apportionment of overlapping factors of disability from two successive injuries. The applicable law is set forth in *Mercier* v. *Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 711 [129 Cal.Rptr. 161, 548 P.2d 361].[4]

---

[4]Under the judge's decision, Carey has two awards: the award on the back injury of 26 percent permanent disability equals $7,035 which is payable at $70 per week; and, the award for the lung condition provides Carey with $119 a week for life. If the 26 percent permanent disability on the back award is subtracted from the 100 percent permanent disability award for the lung injury (as Johns-Manville urges), then Carey would still receive 26 percent permanent disability on the back injury ($7,035) but he would receive only 74 percent permanent disability as to the lung injury. A 74 percent permanent disability award is equivalent to $70 per week for 413.25 weeks, which totals $28,927.50, and thereafter a life pension of $22.61 per week. (See Lab. Code, §§ 4658, 4659.) Thus, to fully accept Johns-Manville's contentions would result in a substantial reduction in total dollar value of Carey's awards.

In *Mercier* the injured, a Los Angeles police officer, suffered an industrial injury to his back in 1970. The appeals board determined that the back disability precluded the injured from doing "heavy lifting and repetitive bending" and awarded a 34½ percent permanent disability rating. In 1971, the worker was found to have suffered an industrially related heart disability occurring over the entire period of employment with the city, 1949 to 1971. The referee[5] requested the rating specialist to submit a permanent disability rating based on the following: "1. Heart disability and arteriosclerosis, more than slight and less than moderate. Applicant should avoid severe emotional stress. 2. Applicant should be limited to work between light and semi-sedentary. 3. Applicant is precluded from strenuous activities. Apportion out 34½%."

The referee in *Mercier* adopted the rating specialist's recommendation, after apportionment, of 40.5 percent permanent disability. Upon petition for reconsideration, the Workers' Compensation Appeals Board affirmed the referee, deciding that the back and heart injuries both prevented petitioner from performing the same type of work.

The court in *Mercier* upheld the Board stating:

"Here, the injuries arose out of separate industrial events. In such case, apportionment turns on whether the second injury decreases the employee's earning capacity or his ability to compete in the open labor market in the same manner as the first. The fact that the injuries occur to two different anatomical parts of the body while relevant, does not in itself preclude apportionment.

"    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .    .

"The question of overlapping disabilities is one of fact—not of logic. The basic purpose of workers' compensation is to compensate diminished ability to compete in the labor market (Lab. Code, § 4660, subd. (a)) rather than to compensate every injury. Proper computation of overlapping disabilities—either partial or total—calls for determining the percentage of combined disability and then subtracting the percentage of disability due to the prior injury. (*Dow Chemical Co.* v. *Workmen's Comp. App. Bd.* (1967) 67 Cal.2d 483, 492 [62 Cal.Rptr. 757, 432 P.2d 365]; *State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson),*

---

[5]The Board has now adopted the term "workers' compensation judge" for its referees. (See Cal. Admin. Code, tit. 8, ch. 4.5, § 10302.)

*supra,* 59 Cal.2d 45, 53; *Subsequent Injuries Fund* v. *Workmen's Comp. Appeals Bd. (Royster)* (1974) 40 Cal.App.3d 403, 409-410 [115 Cal.Rptr. 204].) When all factors of disability attributable to the first injury are included in the factors attributable to the second, there is total overlap. We must conclude the rating properly was based on the combined injury. It is clear in this case that the injuries overlapped, and petitioner has failed to show that any disability factor in the first injury was not included in the instructions to the rating specialist." (Fn. omitted.) (*Mercier, supra,* 16 Cal.3d at pp. 715-716.)

■ While for a single injury the permanent disability rating may not exceed 100 percent (see Lab. Code, §§ 4658, 4659; *State Compensation Ins. Fund* v. *Workers' Comp. Appeals Bd. (Hurley)* (1977) 70 Cal.App.3d 599 [139 Cal.Rptr. 41]), where "successive injuries produce separate and independent disabilities then each is properly rated separately without concern for the theoretical 100 percent assigned to 'total' disability." (*State Compensation Ins. Fund* v. *Industrial Acc. Com. (Hutchinson)* (1963) 59 Cal.2d 45, 53 [27 Cal.Rptr. 702, 377 P.2d 902]; see also *Mercier, supra,* 16 Cal.3d 711, 714.)

"[Thus], the mere occurrence of a second injury does not require apportionment. In each case it must be determined if the second injury impairs the employee's ability to perform work in the same manner as the first injury. If so, apportionment is proper—but only to the extent the two injuries overlap." (*Mercier, supra,* 16 Cal.3d at p. 714.)

■ In this matter the different views on the question of "overlapping disabilities" as expressed by the Board majority and the dissent point to the root of the appeals board's error in this matter. In analyzing the question, the appeals board impermissibly sought to use logic when it should have made a factual inquiry based upon the evidence.

Here the appeals board chose not to seek the expert opinion of a rating specialist on the question of overlapping disabilities. While the rating specialist is not a trier of fact and the appeals board is not bound by his recommendation, the opinion of the specialist is expert testimony. (*Mihesuah* v. *Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 720, 728 [127 Cal.Rptr. 688]; see also *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd. (Stapp)* (1978) 81 Cal.App.3d 586 [146 Cal.Rptr. 513].)

Accordingly, we must examine the remaining evidence in the record to determine whether there are *facts* supporting the conclusion of the majority of the Board.

The evidence on the question of overlapping disabilities consists of the medical evaluations of Dr. Markovitz and Dr. Dahlgren. The trial judge dismissed Dr. Markovitz' opinion because Dr. Markovitz purportedly failed to state the basis for his opinion that Carey was restricted to between "sedentary and semi-sedentary work." Contrary to the trial judge, we view Dr. Markovitz' opinion to be clear in this respect. While Dr. Markovitz' opinion was not followed regarding permanent disability, his view does lend support to the question of overlapping disabilities as his opinion demonstrates that lung disability and the back disability may both involve work restrictions under the "Guidelines for Work Capacity."[6] (See *State Comp. Ins. Fund* v. *Workers' Comp. Appeals Bd. (Gaba)* (1977) 72 Cal.App.3d 13, 16-17 [139 Cal.Rptr. 802].)

---

[6]Under the "Guidelines for Work Capacity" set forth at page 1A of the Schedule for Rating Permanent Disabilities ("Rating Schedule") the following are the major work restriction classifications:

"GUIDELINES FOR WORK CAPACITY

"*These apply to pulmonary,* heart disease, abdominal weakness and spinal *disabilities.* [Emphasis added.]

"*Guidelines g) and h) may apply to lower extremity disabilities.*

"a) *Disability Precluding Very Heavy Lifting*
contemplates the individual has lost approximately one-quarter of his pre-injury capacity for lifting.
(A statement 'inability to lift 50 pounds' is not meaningful. The total lifting effort, including weight, distance, endurance, frequency, body position and similar factors should be considered with reference to the particular individual.)
[A ten (10) standard rating.]

"b) *Disability Precluding Very Heavy Work*
contemplates the individual has lost approximately one-quarter of his pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling and climbing or other activities involving comparable physical effort.
[A fifteen (15) standard rating.]

"c) *Disability Precluding Heavy Lifting*
contemplates the individual has lost approximately half of his pre-injury capacity for lifting.
(See statement regarding lifting under a) above.)
[A twenty (20) standard rating.]

"d) *Disability Precluding Heavy Lifting, Repeated Bending and Stooping*
contemplates the individual has lost approximately half of his pre-injury capacity for lifting, bending and stooping.
[A twenty-five (25) standard rating.]

"e) *Disability Precluding Heavy Work*
Contemplates the individual has lost approximately half of his pre-injury capacity for performing such activities as bending, stooping, lifting, pushing, pulling, and climbing or other activities involving comparable physical effort.
[A thirty (30) standard rating.]

As to Dr. Dahlgren, he nowhere discusses the medical issues relevant to the question of "overlapping disabilities" in terms of his findings. While Dr. Dahlgren does state that Carey is totally permanently disabled based upon the lung disability alone without regard to the back disability, this does not give much help on the pertinent question of overlapping disabilities. Failure of Dr. Dahlgren to discuss the issue renders his report defective for our present purpose. (*Gaba, supra,* 72 Cal.App.3d 13, 16-17; *Dorman* v. *Workers' Comp. Appeals Bd.* (1978) 78 Cal.App.3d 1009, 1019 [144 Cal.Rptr. 573].) This is not to say that Dr. Markovitz' report is entirely satisfactory. Dr. Markovitz' report merely depicts Carey's lung disability in terms of work restrictions and fails to discuss whether or not there are any factors of lung disability which do not overlap with the back disability. (*Gaba, supra,* 72 Cal.App.3d 13, 17, fn. 2.)

As stated, the question of overlapping disabilities is a factual inquiry. The Board must make findings of fact as to all the factors of disability for the lung condition and then evaluate the question of overlapping disabilities. (*Gaba, supra,* 72 Cal.App.3d 13, 17.) This inquiry may not be evaded by mere use of language. (*Gaba, supra,* 72 Cal.App.3d 13; Cal. Workmen's Compensation Practice (Cont.Ed.Bar supp. 1978) § 15.45, p. 146.)

Even if there are overlapping factors of disability between the lung and back injuries, Carey may perhaps still achieve a 100 percent rating for the lung injury by application of the rating schedule to the factors of disability that do not overlap. (See *Gaba, supra,* 72 Cal.App.3d 13, 17.) As a person may receive a "mechanical" 100 percent disability rating based upon the computations pursuant to the Rating Schedule even though the

---

"f) *Disability Resulting in Limitation to Light Work*
contemplates the individual can do work in a standing or walking position, with a minimum of demand for physical effort.
[A fifty (50) standard rating.]
"g) *Disability Resulting in Limitation to semi-Sedentary Work*
contemplates the individual can do work approximately one half the time in a sitting position, and approximately one half the time in a standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting.
[A sixty (60) standard rating.]
"h) *Disability Resulting in Limitation to Sedentary Work*
contemplates the individual can do work predominantly in a sitting position at a bench, desk or table with a minimum of demands for physical effort and with some degree of walking and standing being permitted.
[A seventy (70) standard rating.]"

person is not in fact permanently totally disabled (see *Smith* v. *Industrial Acc. Com.* (1955) 44 Cal.2d 364, 367-368 [282 P.2d 64]) it is conceivable that after any overlapping factors are apportioned, the remaining factors of lung disability under the rating schedule may yet entitle Carey to a 100 percent disability rating.[7] However, on the present record this is impossible to determine. A rating specialist's expert opinion will undoubtedly be of assistance to the Board in this regard.

C. *Refusal to Refer the Injured to an Independent Medical Examiner*

Johns-Manville admits that the referral to an independent medical examiner[8] in the lung case is a matter of discretion, but argues "where the difference in the opinions of the medical specialists is so divergent regarding permanent disability and where the difference in compensation rates is so tremendous . . . it was, in this case, an abuse of the Board's discretion in failing to refer this matter to an Independent Medical Examiner."

█ The issue is whether the appeals board abused its discretion on the question of an independent medical examiner. (See *Cadotte* v. *Industrial Acc. Com.* (1948) 86 Cal.App.2d 754, 761 [194 P.2d 563].)

It cannot be said that as a matter of law the appeals board must make a referral to an independent medical examiner merely because of a

---

[7]Thus, the question of overlapping disabilities is not resolved, as Johns-Manville suggests, by merely subtracting the back disability rating from the 100 percent rating for the lung case.

[8]Labor Code section 5703.5 provides: "The appeals board may at any time after an application is filed and prior to the expiration of its jurisdiction, upon the agreement of a party to pay the cost, direct the injured employee to be examined by a doctor selected by the appeals board or agreed upon by the parties to report upon any medical question pertinent to any matter then at issue before the appeals board."

Section 10700 of the WCAB Rules of Practice and Procedure provides: "Independent and Agreed Medical Examiners. The Appeals Board or a referee thereof may refer disputed medical questions in connection with compensation proceedings to its own medical bureau or to an independent medical examiner appointed and assigned pursuant to Labor Code Section 139 or Section 5703.5. Said reference may be for examination of the injured employee or for an investigation of the medical question involved without examination of the injured person.

"Where the trial referee refers a case to a physician agreed upon by the parties and paid for by one or more of them, the reference need not be made through the medical bureau. The examining doctor will be termed 'Agreed Medical Examiner.' " (Cal. Admin. Code, tit. 8, ch. 4.5, § 10700.)

divergence of medical opinion. To so hold would undoubtedly require independent medical examiners to be unnecessarily appointed. While the appeals board must utilize expert medical opinion on many issues (see, e.g., *Bstandig* v. *Workers' Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 995-996 [137 Cal.Rptr. 713]), it and not the physician is the trier of fact. Accordingly, we cannot say the appeals board abused its discretion in refusing to appoint an independent medical examiner.

## IV

### *Disposition*

The award on the lung condition and the order denying reconsideration are annulled and the cause is remanded with directions that the Board reconsider the matter of overlapping disabilities and make specific findings with respect thereto.

Stephens, J., and Ashby, J., concurred.