[No. B092532. Second Dist., Div. Two. June 12, 1996.]

FRANK BRANNEN, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD and STATE
COMPENSATION INSURANCE FUND, Respondents.

378

**Counsel**

Robin and Carmack and Robert Marc Robin for Petitioner.

Krimen, Klein, Da Silva, Daneri & Bloom and Louis Harris for Respondents.

## OPINION

**FUKUTO, J.**—Three and one-half years after the parties had stipulated to industrial injury and to an award for it, the Workers' Compensation Appeals Board (board) rescinded the stipulation and rendered a new finding of no such injury, based on a conflicting medical opinion and a legal interpretation contrary to a governing Court of Appeal decision. Because this disposition exceeded the board's proper authority, we annul it.

### STATEMENT

Petitioner Frank Brannen was employed between 1986 and 1989 as a mechanic, manager, and driver by Cities Towing, Incorporated. Laboring to improve the business, petitioner worked seven days a week, sometimes seventeen hours a day. His work continually exposed him to exhaust fumes and dust. In September 1989, petitioner developed shortness of breath, but continued working. He soon collapsed at home and was hospitalized, with a diagnosis of viral bronchitis. Petitioner returned to work for portions of two days, but again lost consciousness and was hospitalized with viral meningitis.

After his infection resolved, petitioner continued to experience pains and difficulty breathing, and he was referred to Dr. Lineback, an internist. Dr. Lineback diagnosed a mild airflow obstruction, related to the bronchitis, and prescribed bronchodilator medicine. He opined that petitioner's exposure to irritating exhaust fumes at work had aggravated his symptoms. Petitioner subsequently experienced several dramatic instances of breathing difficulty, for which he was given portable oxygen.

Petitioner filed a workers' compensation application in October 1989. By late 1991, he had ceased working and had become dependent on the portable oxygen, which he used constantly. Extremely depressed, petitioner had four times attempted suicide, in one case wounding his arm when attempting to shoot himself in the heart. Petitioner also was undergoing psychiatric treatment.

At this point, petitioner and the employer's insurer, respondent State Compensation Insurance Fund (SCIF), entered into a "Stipulations with Request for Award," to the effect that petitioner had sustained injury to his internal system and psyche, arising out of and in the course of employment. SCIF accepted liability for treatment, retroactive to September 1989, the onset of petitioner's illness. The issues of extent of temporary and permanent disability were reserved, with further agreement that "Parties will utilize

AME's [agreed medical examiners] for issues of nature and extent of internal (pulmonary) and psychiatric disability, including apportionment to non-industrial factors." Based on this stipulation, an award was made to petitioner in October 1991.

Another internist, Dr. Levister, was appointed agreed medical examiner (AME) with respect to petitioner's physical disability. He reported that petitioner had experienced an airway obstruction as of his hospitalization and initial visits to Dr. Lineback in 1989. Dr. Levister deemed it possible, but not probable, that petitioner's work had adversely impacted the viral infection. However, petitioner presently experienced no residual, physical respiratory disability, his pulmonary function tests being within normal range. Although he thus had no actual, physical need for the portable oxygen he used, petitioner believed in good faith that he still suffered from a pulmonary disability, related to his work.

Dr. Feldman, the AME in psychiatry, diagnosed petitioner's condition as major depression, and found him totally disabled from working. The psychiatric illness derived from petitioner's respiratory problems. Dr. Feldman found that petitioner presently believed he had a severe, disabling breathing problem. Ultimately, Dr. Feldman opined, the "etiology" of the mental illness would be the same as that of the physical condition.

Pursuant to the prior stipulation, the workers' compensation judge (WCJ) found that petitioner had sustained industrial injury to his internal system and psyche. Based on the AME's' reports, the WCJ further found petitioner to be 100 percent permanently disabled, and in need of further medical care.

SCIF petitioned the board for reconsideration, on grounds the record did not support a finding of industrial injury. In its prayer, SCIF requested that a finding of no industrial injury be issued and that, pursuant to Labor Code section 5803, the stipulated award of October 1991 be "rescinded as contrary to the record."[1]

The board granted reconsideration and, with one member dissenting, ruled for SCIF. Observing that "[t]he issue presented is one of causation," the board at first acknowledged that "[t]he applicable law was stated by the Second Appellate District," in *Cooper* v. *Workers' Comp. Appeals Bd.* (1985) 173 Cal.App.3d 44 [218 Cal.Rptr. 783] (hereafter *Cooper*). In *Cooper,* the

---

[1]Section citations hereafter are to the Labor Code. Section 5803 relevantly provides: "The appeals board has continuing jurisdiction over all its orders, decisions, and awards . . . . At any time, upon notice and after an opportunity to be heard is given to the parties in interest, the appeals board may rescind, alter, or amend any order, decision, or award, good cause appearing therefor."

applicant, exposed to asbestos at work, had been examined at the employer's behest by a physician who opined the applicant was totally disabled due to asbestosis. This diagnosis proved incorrect, but the applicant, convinced he was dying of asbestosis, developed a depressive, hysterical psychiatric illness. The court held the psychiatric disability compensable, because it had been caused in fact by the industrial exposure and resultant medical examination and diagnosis.

A dissent in *Cooper, supra,* 173 Cal.App.3d at pages 50-51, criticized the majority's citation of section 3202 (providing for liberal construction of the workers' compensation law), and opined that absent any workplace physical harm, an erroneous diagnosis of it could not ground a finding of industrially caused psychiatric injury. More recently, in *Rodriguez v. Workers' Comp. Appeals Bd.* (1994) 21 Cal.App.4th 1747, 1760, footnote 4 [27 Cal.Rptr.2d 93] (*Rodriguez*), another division of this district distinguished *Cooper* on its facts, and agreed with the *Cooper* dissent's observation that section 3202 did not apply to resolving factual issues.

Having initially acknowledged that *Cooper, supra,* 173 Cal.App.3d 44, provided the relevant standards, the board in the present case proceeded to state: "We agree with [the] dissenting opinion in *Cooper* and the comments in *Rodriguez* and hold that applicant must demonstrate some industrial exposure, causing or contributing to the underlying physical injury from which the psychiatric disability arose, in order for there to be a compensable industrial psychiatric injury." The board then held that petitioner's psychiatric disability could not be so connected to his employment, because it stemmed from the original pulmonary disability which Dr. Levister had been unable to characterize as work related. Without referring to Dr. Lineback's opinion of industrial impact, the board concluded that petitioner had failed to "demonstrate that there was actually something in the workplace that caused or contributed to the physical condition that caused the psychiatric disability."

The board then found good cause under section 5803 to rescind the stipulated award, because it had preceded the AME reports, by virtue of which, the board stated, "the facts stipulated to have changed. Where Dr. Lineback found an industrial component to applicant's disability, the AME, Dr. Levister, did not." The board cited *Huston v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 865-866 [157 Cal.Rptr. 355] (*Huston*), to the effect that an executed stipulation may be rescinded where the facts stipulated to or the underlying conditions have changed.

## DISCUSSION

In ruling that petitioner had not suffered a compensable, industrial injury, the board overrode and rescinded the parties' stipulation to the

contrary, and the award thereon, previously extant for three and one-half years. This disposition was improper.[2]

■ Section 5803 accords the board continuing jurisdiction to rescind or revise its awards, "upon good cause shown." Such cause may consist of newly discovered evidence previously unavailable, a change in the law, or ". . . any factor or circumstance unknown at the time the original award or order was made which renders the previous findings and award 'inequitable.' " (*LeBoeuf* v. *Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 242 [193 Cal.Rptr. 547, 666 P.2d 989]; see *id.* at p. 241.)

More specifically, an award based an executed stipulation may be reopened and rescinded if the stipulation "has been 'entered into through inadvertence, excusable neglect, fraud, mistake of fact or law, where the facts stipulated have changed or there has been a change in the underlying conditions that could not have been anticipated, or where special circumstances exist rendering it unjust to enforce the stipulation.' " (*Huston, supra,* 95 Cal.App.3d at pp. 865-866.) On the other hand, " '[w]hen there is no mistake but merely a lack of full knowledge of the facts, which . . . is due to the failure of a party to exercise due diligence to ascertain them, there is no proper ground for relief.' " (*Id.* at p. 866.) Thus, in *Liberty Mut. Ins. Co.* v. *Workers' Comp. Appeals Bd.* (1981) 118 Cal.App.3d 265, 276 [173 Cal.Rptr. 349], we approved the board's refusal to conduct substantial evidence review of a finding of specific injury, because the insurer had stipulated to it, and had not shown good cause under *Huston* to be released from the stipulation.

■ In the present case, the board's basis for rescinding the stipulation to petitioner's industrial injury was that "the facts stipulated to ha[d] changed" (see *Huston, supra,* 95 Cal.App.3d at pp. 865-866), in that after the stipulation Dr. Levister, the AME, had rendered a negative opinion regarding industrial causation, contrary to the opinion of Dr. Lineback that preceded the stipulation. For several reasons, the advent of Dr. Levister's opinion did not provide grounds to rescind the stipulation and award.

First, it is dubious that a newly conflicting medical opinion may properly be considered a "change in the facts stipulated to." Medical opinions by definition are not facts, and their frequent variety and conflict in a given case

[2]The board's decision was not jurisdictionally untimely, as petitioner contends. Under section 5804, the board may rescind an award within five years after the date of injury, or upon a petition filed within that period. SCIF's petition was filed within the five-year period.

bespeak their subjectivity and malleability.[3] To say that a new medical opinion about an issue suffices as good cause to undo a stipulation resolving it would substantially undermine the intended and expected utility and durability of stipulations. "Stipulations are designed to expedite trials and hearings and their use in workers' compensation cases should be encouraged." (*Robinson* v. *Workers' Comp. Appeals Bd.* (1987) 194 Cal.App.3d 784, 791 [239 Cal.Rptr. 841] (*Robinson*).) A party cannot be permitted to withdraw from a stipulation simply because another expert has a different opinion. Recognizing this, the *Robinson* court refused to allow relief from a stipulation that conflicted with an independent medical examiner's (IME's) opinion, for the very reason that there were other doctors' opinions of record that conflicted with it, and supported the stipulation. (*Ibid.*)

Just as the IME's opinion in *Robinson, supra,* 194 Cal.App.3d 784, did not provide good cause for undoing the stipulation in that case, that Dr. Levister opined as AME did not justify using his opinion to trump the stipulation and award in this case. In fact, the structure of the proceedings made this especially inappropriate. Dr. Levister's appointment was a product of the stipulation itself. Under it, the AME's were to opine about the "nature and extent of internal (pulmonary) and psychiatric disability, including apportionment to non-industrial factors"—not whether there had been an industrial injury, a question the stipulation had disposed of. The board's use of AME opinions to overturn the stipulation thus was improper. Indeed, redetermination of the case on the basis of those opinions, without affording petitioner an opportunity to adduce evidence in support of the stipulated determination, may have denied due process. (*Turner Gas Co.* v. *Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 286, 291-292 [120 Cal.Rptr. 663] ["[A]rguably, due process dictates that [a party to a stipulation] always must be given notice and the opportunity to present evidence on a material fact covered by the stipulation before it is disregarded."].)

The board therefore should not have rescinded and disregarded the parties' stipulation to industrial injury. In light of that stipulation, as well as the opinion of Dr. Lineback regarding industrial contribution to petitioner's original respiratory illness, the WCJ's determination of compensable permanent disability was supported by substantial evidence, under *Cooper, supra,* 173 Cal.App.3d 44.[4] ██ Indeed, petitioner's case was even more traditionally compelling than that in *Cooper,* because petitioner's psychiatric

[3]The record on which the board here relied demonstrates the delicate relativity of such opinions. When asked at deposition whether work-generated fatigue could have been a factor in the petitioner's meningitis, Dr. Levister replied, "I can say that I think it's possible, but I'm not comfortable with probable; I can come to possible but not probable."

[4]The board's suggestion that petitioner did not honestly believe that his perceived respiratory disability had been impacted by his employment is totally unsupported. (See *Albertson's,*

disability stemmed from actual industrial physical injury, the very prerequisite the board sought to add to *Cooper*.[5]

## DISPOSITION

The order under review is annulled. Petitioner shall recover his costs from respondent SCIF.

Boren, P. J., and Nott, J., concurred.

---

*Inc.* v. *Workers' Comp. Appeals Bd.* (1982) 131 Cal.App.3d 308, 313-315 [182 Cal.Rptr. 304] [eschewing compensation for claims of industrial connection that are "after the fact rationalizations"].) Both AME's testified to the contrary, Dr. Feldman qualifying his opinion only to avoid legal conclusions. And petitioner's filing his application before he saw Dr. Lineback, cited by the board, as much supports an independent belief of industrial involvement as it does anything else.

[5]The board's effort to redefine and restrict *Cooper* thus was gratuitous—and also improper. Like other inferior courts, the board was and is jurisdictionally required to adhere to and follow the decisions of the Court of Appeal. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]; *Ryerson Concrete Co.* v. *Workmen's Comp. Appeals Bd.* (1973) 34 Cal.App.3d 685, 688 [110 Cal.Rptr. 319].) Neither the presence of a dissent in *Cooper*, nor the passing criticism of it in obiter dictum in a later decision (*Rodriguez, supra*, 21 Cal.App.4th at p. 1760, fn. 4), authorized disregarding *Cooper's* holding.