[No. C062019. Third Dist. Jan. 29, 2010.]

FIREMAN'S FUND INSURANCE COMPANY, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD, CALIFORNIA
INSURANCE GUARANTEE ASSOCIATION et al., Respondents.

754

756

**COUNSEL**

Cuneo, Black, Ward & Missler and Richard A. Weyuker for Petitioner.

Guilford Steiner Sarvas & Carbonara, Richard E. Guilford; Hanna, Brophy, MacLean, McAleer & Jensen and Frank W. Lem for Respondent California Insurance Guarantee Association.

No appearance for Respondent Workers' Compensation Appeals Board.

No appearance for Respondent Darla Allen.

**OPINION**

**CANTIL-SAKAUYE, J.**—Can a stipulation, entered into in 2001, that resolved an unsettled legal issue between the two entities be set aside seven years later after the legal issue has been addressed by the appellate courts?

In 2001, the California Insurance Guarantee Association (CIGA) entered into a stipulation with Fireman's Fund Insurance Company (FFIC) in which it agreed to be liable for 50 percent of an injured employee's workers' compensation medical treatment award and to administer the medical award, subject to claims of contribution from FFIC. The stipulation was entered as an order by the Workers' Compensation Appeals Board (WCAB). In 2008, CIGA petitioned for a change of administrator and dismissal after several appellate court cases decided years after its settlement with FFIC indicated CIGA should not be responsible for the medical award. The workers' compensation judge (WCJ) granted CIGA's petition, concluding the 2001

stipulation and order were illegal and contrary to public policy. The WCAB denied reconsideration. FFIC sought a writ of review. We granted review and now conclude the WCAB erred in denying reconsideration. The order and stipulation should not have been set aside.[1] We shall annul the WCAB's order denying reconsideration and remand the matter to the WCAB for further proceedings consistent with this opinion.

## BACKGROUND

Darla Allen was injured during the course of her employment with the Dry Creek Elementary School District when the schoolbus she was driving hit a pothole. She filed a number of workers' compensation claims, claiming specific and cumulative injuries. In 1999, the WCJ found a specific injury in one case, an aggravating injury in a second case, and a continuing cumulative injury in a third case resulting in Allen's permanent disability and the need for further medical treatment. The WCJ found one-half of the total permanent disability indemnity was due to the initial specific injury and one-half was due to the cumulative injury. The WCJ awarded Allen compensation in her two specific injury cases against California Compensation Insurance Company (CCIC), the district's insurer at the time of the specific injuries. The WCJ awarded Allen compensation in the cumulative injury case against CCIC and FFIC, the latter having become the district's insurer for a portion of the liability period of the cumulative injury. FFIC and CCIC were both held liable for Allen's further medical treatment for her injuries.

CCIC subsequently became insolvent in 2000. CIGA assumed liability for CCIC's "covered claims" pursuant to Insurance Code section 1063.1.[2] CIGA petitioned the WCAB for an order dismissing it from Allen's cumulative injury case and sought to have FFIC designated the primarily liable carrier to pay and administer the award.

---

[1] CIGA suggests venue of this proceeding should be in the First Appellate District based on FFIC having its principal place of business there. (Lab. Code, § 5950; *National Kinney v. Workers' Comp. Appeals Bd.* (1980) 113 Cal.App.3d 203, 208–209 [169 Cal.Rptr. 801] (*National Kinney*).) "[R]esidency of the petitioner, pursuant to Labor Code section 5950, is a directory requirement rather than mandatory for purposes of jurisdiction." (*National Kinney, supra,* at p. 209.) Although we could have requested the Supreme Court to transfer the matter to the First District (Cal. Const., art. VI, § 12, subd. (a); *National Kinney, supra,* at p. 209), we chose to retain the matter as the employer and employee are both located in this district, the injury occurred in this district and all of the original proceedings occurred within this district. (*Argonaut Ins. Co. v. Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669, 671–672 [55 Cal.Rptr. 810].)

[2] Hereafter, undesignated statutory references are to the Insurance Code.

At the time of CIGA's petition, case law held CIGA was not liable for benefits to an employee for a single cumulative trauma where a joint and several award had been entered against several workers' compensation insurers, including the subsequently insolvent insurance company. (*Industrial Indemnity Co. v. Workers' Comp. Appeals Bd.* (1997) 60 Cal.App.4th 548, 558–559 [70 Cal.Rptr.2d 295] (*Industrial Indemnity (Garcia)*).) There was, however, no appellate decision or WCAB decision considering CIGA's liability in a successive injuries case such as this.

In 2001, CIGA and FFIC stipulated to the following: "(1) Fireman's Fund is solely liable for the cumulative trauma claim (SAC 0261608) and CIGA is soley [*sic*] liable for the specific injuries (SAC 0255539/40/41/42). [¶] (2) Each defendant is liable for 50% of the applicant's joint medical award. CIGA will continue to administer the medical award, subject to claims of contribution from Fireman's Fund. [¶] (3) These Stipulations resolve all issues set for trial in the Minutes of Hearing of 01/09/2001." The stipulations were entered as an order of the WCAB by the WCJ.

Thereafter, over the next several years the law on successive injuries, as it related to CIGA, was addressed in several legal decisions. In 2003, the WCAB held that "[i]n successive injury cases, an apportionment of liability must be made by the WCJ or [WCAB], setting the specific percentage of liability of all carriers, which will likewise set CIGA's liability for any now-insolvent carrier." (*Gomez v. Casa Sandoval* (2003) 68 Cal.Comp.Cases 753, 755 (*Gomez*).) The stipulations between CIGA and FFIC were generally consistent with *Gomez*.

However, in *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2005) 128 Cal.App.4th 307 [26 Cal.Rptr.3d 845] (*CIGA v. WCAB (Weitzman)*), a case involving three successive injuries, the Court of Appeal concluded CIGA could not be required to reimburse a solvent insurer for the portion of workers' compensation benefits for which insolvent insurers had been found responsible. (*Id.* at pp. 313, 320.) The appellate court specifically disagreed with the reasoning in *Gomez, supra,* 68 Cal.Comp.Cases 753. (*CIGA v. WCAB (Weitzman)*, at pp. 317–320.)

Then, in *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2007) 153 Cal.App.4th 524 [62 Cal.Rptr.3d 855] (*CIGA v. WCAB (Hernandez)*), another case involving successive injuries, the court determined the solvent insurer had to reimburse CIGA for all of the temporary

workers' compensation benefits CIGA paid. (*Id.* at pp. 528–529, 537–538.) The court stated: "Between workers' compensation insurers who are jointly and severally liable for various nonpermanent disability benefits, there is generally pro rata apportionment for the shared liability. (See generally Lab. Code, §§ 3208.2, 5303, 5500.5.) But CIGA is not another workers' compensation insurer; it is a fund with responsibilities that are limited by statute in order to insure that the worker is protected. CIGA does not protect insurers." (*CIGA v. WCAB (Hernandez)*, *supra*, at p. 537.)

Thus, in 2008, in this case CIGA petitioned the WCAB for a change of administrators and a dismissal of CIGA citing *CIGA v. WCAB (Hernandez)*, *supra*, 153 Cal.App.4th 524, and a number of decisions of the WCAB authorizing a change of administrator on the petition of CIGA. CIGA took the position it was not liable for Allen's further medical treatment benefits or administration of those benefits because FFIC was jointly and severally liable for those benefits and thus, there was "other insurance" within the meaning of section 1063.1, subdivision (c)(9), i.e., the benefits were not a "covered claim" for which CIGA was responsible (§§ 1063.1, 1063.2, subd. (a)).

CIGA's petition was granted in a joint findings and order. The WCJ concluded this case fell squarely within *CIGA v. WCAB (Hernandez)*, *supra*, 153 Cal.App.4th 524, and rejected FFIC's claim that CIGA was bound by its stipulations. The WCJ stated stipulations that are "illegal or contrary to public policy" must be disregarded. Since "CIGA is a creation of statute and is bound by statute to pay only on covered claims," the WCJ reasoned CIGA could "not stipulate beyond that authority, nor [could] the [Division of Workers' Compensation] enforce such a stipulation."

FFIC petitioned the WCAB for reconsideration. (Lab. Code, §§ 5900, 5903.) In his report and recommendation on the petition for reconsideration, the WCJ emphasized that CIGA is not a private insurer and is statutorily limited under section 1063.2, subdivision (a), to paying only covered claims, which the medical treatment benefit in this case was not. The WCJ rejected FFIC's argument that CIGA was not entitled to be relieved from the stipulations and that the order entered on those stipulations must be given res judicata effect. The WCJ repeated the stipulations were illegal and contrary to public policy and that rejection of the stipulations resulted in a correct application of the law. The WCAB adopted the reasoning of the WCJ's report and denied reconsideration.

## DISCUSSION

FFIC contends the 2001 stipulations should not have been set aside as they were voluntarily entered, public policy supports enforcement of the stipulations, CIGA failed to show good cause to set them aside, it was not illegal for CIGA to enter the stipulations, the order entered on the stipulations was entitled to res judicata effect, and there was no "change in law" that permitted CIGA to avoid its responsibility to pay pursuant to the stipulations.

Relying on the present state of the law regarding its liability for an award of medical treatment benefits when there is a solvent insurer who is jointly and severally liable for such benefits, CIGA contends its 2001 stipulations were a nullity and void, as well as unenforceable for lack of consideration. CIGA claims the order entered on the stipulations was likewise void and unenforceable.

Labor Code section 5803 provides the WCAB with "continuing jurisdiction over all its orders, decisions, and awards" and authorizes the WCAB to "rescind, alter, or amend any order, decision, or award, good cause appearing therefor." Labor Code section 5804, however, provides, "No award of compensation shall be rescinded, altered, or amended after five years from the date of injury except upon a petition by a party in interest filed within such five years . . . ." We requested the parties to supply supplemental briefs addressing the possible application of section 5804 to this matter.

## I.

### Standard of Review

"On review of a decision by the WCAB, we decide questions of statutory interpretation de novo." (*California Insurance Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2003) 112 Cal.App.4th 358, 362 [5 Cal.Rptr.3d 127] (*CIGA v. WCAB (Mangum)*).)

The questions here are whether CIGA had statutory authority to enter into the 2001 stipulations, whether under the applicable statutes the WCAB had jurisdiction to enter an order based on such stipulations, and whether the WCAB had statutory authority to set aside the stipulations and order seven years later.

## II.

### Background Regarding CIGA

"Established in 1969 under the Guarantee Act (art. 14.2 of the Ins. Code), CIGA provides 'insolvency insurance' against loss arising from the failure of an insolvent insurer to discharge its obligations under its insurance policies. [Citations.] Although funded by a compulsory membership of insurance companies doing business in California, CIGA 'was created to provide a limited form of protection for insureds and the public, not to provide a fund to protect insurance carriers.' [Citations.] CIGA's role in guaranteeing workers' compensation claims is therefore limited:

" ' "CIGA is not, and was not created to act as, an ordinary insurance company. [Citation.] It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections." [Citation.] "CIGA issues no policies, collects no premiums, makes no profits, and assumes no contractual obligations to the insureds." [Citation.] "CIGA's duties are not co-extensive with the duties owed by the insolvent insurer under its policy." [Citation.] Instead, CIGA's authority and liability in discharging "its statutorily circumscribed duties" are limited to paying the amount of "covered claims." [Citations.] CIGA "is authorized by statute to pay only 'covered claims' of an insolvent insurer, those determined by the Legislature to be in keeping with the goal of providing protection for the insured public. [Citation.]" [Citation.] CIGA has the statutory authority to "deny a noncovered claim." [Citation.]

" ' "Since 'covered claims' are not coextensive with an insolvent insurer's obligations under its policies, CIGA cannot and does not ' "stand in the shoes" of the insolvent insurer for all purposes.' [Citation.] Indeed, CIGA is 'expressly forbidden' to do so except where the claim at issue is a 'covered claim.' [Citation.] It necessarily follows that CIGA's first duty is to determine whether a claim placed before it is a 'covered claim.' " [Citation.] "It is unequivocally clear the scope of CIGA's rights and duties turns on the definition of 'covered claim.' " [Citation.]' [Citation.]" (*Denny's Inc. v. Workers' Comp. Appeals Bd.* (2003) 104 Cal.App.4th 1433, 1438 [129 Cal.Rptr.2d 53] (*Denny's Inc.*), quoted in *CIGA v. WCAB* (*Mangum*), *supra*, 112 Cal.App.4th 358, 363–364; accord, *Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 786–787 [244 Cal.Rptr. 655, 750 P.2d 297] (*Isaacson*); *California Ins. Guarantee Assn. v. Workers' Comp. Appeals Bd.* (2006) 136 Cal.App.4th 1528, 1534–1535 [39 Cal.Rptr.3d 721].)

## III.

## CIGA's Stipulations and the Subsequently Entered Order on the Stipulations Were Not a Nullity and Void

*A. CIGA Had Statutory Authority to Enter into the 2001 Stipulations*

Commensurate with its duty " ' "to determine whether a claim placed before it is a 'covered claim' " ' " (*Denny's Inc., supra,* 104 Cal.App.4th at p. 1438), CIGA apparently assessed the nature of the awards made to Allen in this case when it became responsible for CCIC. Relying on *Industrial Indemnity (Garcia), supra,* 60 Cal.App.4th 548, CIGA petitioned the WCAB for an order dismissing it from Allen's cumulative injury case and sought to have FFIC designated the primarily liable carrier to pay and administer the award.

Although *Industrial Indemnity (Garcia), supra,* 60 Cal.App.4th 548, held CIGA was not liable for benefits to an employee for a *single* cumulative trauma where a joint and several award had been entered against several workers' compensation insurers, including the subsequently insolvent insurance company, at the time of CIGA's petition there was no appellate decision or WCAB decision considering CIGA's liability in a *successive* injuries case such as this. In 2001, the law was unsettled as to whether CIGA was liable for any portion of the cumulative trauma award or for Allen's future medical treatment. It was unclear whether CIGA or FFIC should be primarily liable for administration of the award.

In this context, CCIC and FFIC decided to settle the case by entering into stipulations that provided FFIC was solely liable for the cumulative trauma claim, CIGA was solely liable for the specific injury claims, and CIGA and FFIC would split the liability for the joint medical award. CIGA agreed to administer the medical award subject to contribution from FFIC.[3]

██ "A stipulation is '[a]n agreement between opposing counsel . . . ordinarily entered into for the purpose of avoiding delay, trouble, or expense in the conduct of the action,' [citation] and serves 'to obviate need for proof or to narrow [the] range of litigable issues' [citation] in a legal proceeding." (*County of Sacramento v. Workers' Comp. Appeals Bd.* (2000) 77 Cal.App.4th 1114,

---

[3] We reject CIGA's contention that the stipulations were unenforceable under contract principles because FFIC paid no consideration. Viewed from the perspective of 2001 when CIGA and FFIC entered into their stipulations, mutual consideration supported their settlement. FFIC gave up its claim that CIGA was responsible for a portion of the cumulative trauma award and CIGA gave up its claim that FFIC should be solely responsible for paying and administering the medical treatment award.

1118 [92 Cal.Rptr.2d 290] (*County of Sacramento v. WCAB* (*Weatherall*)).) A "stipulation furthers the public policies of settling disputes and expediting trials . . ." (*Estate of Burson* (1975) 51 Cal.App.3d 300, 307 [124 Cal.Rptr. 105]) "and their use in workers' compensation cases should be encouraged" (*Robinson v. Workers' Comp. Appeals Bd.* (1987) 194 Cal.App.3d 784, 791 [239 Cal.Rptr. 841] (*Robinson*)). Having assessed the likelihood of a decision in their favor and the accompanying risk of a decision against them, parties in workers' compensation proceedings, as in other cases, may settle a case, accepting less than they want in order to limit the risk of receiving even less or nothing at all.

From the record before us, it appears counsel for CIGA and FFIC entered into the stipulations to settle the issues raised by CIGA's petition before trial for just such purposes.

CIGA now questions in retrospect its statutory authority to enter the stipulations. CIGA argues that in discharging its statutory obligations, it "has authority to make binding agreements to resolve doubtful claims, those in which the trier of facts must resolve factual issues to determine whether a claim is a 'covered claim' or not. But where, as here, a final award has made 'other insurance' undeniably available to the claimant, CIGA thereafter simply cannot agree to pay what is a noncovered claim. CIGA has the duty to 'deny a noncovered claim,' and cannot waive that duty."

CIGA's argument assumes the law was clear at the time of its settlement that FFIC was "other insurance" on the cumulative and medical treatment awards. If it had been, there is no question CIGA would have been required to refuse liability (§§ 1063.1, former subd. (c)(9)(i),[4] 1063.2, subd. (b)(3), 1063.12, subd. (a)) and it undoubtedly would not have settled with FFIC. But the law was not clear. Therefore, the issue, more properly framed, is CIGA's authority to stipulate and enter a binding settlement of a claim where its liability is uncertain.

Section 1063.2, subdivision (b), provides in relevant part: "[CIGA] shall be a party in interest in all proceedings involving a covered claim, and *shall have the same rights as the insolvent insurer* would have had if not in liquidation, *including, but not limited to*, the right to: (1) . . . , (2) receive notice of, *investigate, adjust, compromise, settle*, and pay a covered claim, and (3) *investigate, handle*, and deny a noncovered claim." (Italics added.)

▮ "When construing statutes, our goal is ' "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best

---

[4] Now section 1063.1, subdivision (c)(9)(A), as amended by Statutes 2007, chapter 100, section 2.

effectuates the purpose of the law." ' [Citation.] We first examine the words of the statute, 'giving them their ordinary and usual meaning and viewing them in their statutory context, because the statutory language is usually the most reliable indicator of legislative intent.' [Citation.] If the statutory language is ambiguous and susceptible of differing constructions, we may reasonably infer that the legislators intended an interpretation producing practical and workable results rather than one resulting in mischief or absurdity. [Citation.] It is a fundamental tenet of statutory construction that we must give the statute a *reasonable* construction conforming to legislative intent. [Citation.]" (*City of Santa Monica v. Gonzalez* (2008) 43 Cal.4th 905, 919 [76 Cal.Rptr.3d 483, 182 P.3d 1027].)

Applying these principles, it is clear section 1063.2, subdivision (b), broadly authorizes CIGA to investigate claims with the object of paying covered claims and denying noncovered claims. The statute gives CIGA express authority to settle covered claims. Section 1063.2, subdivision (b), does not expressly grant CIGA authority to settle claims when coverage is reasonably disputed factually or legally. However, this is not conclusive since the statute provides CIGA "shall have the same rights as the insolvent insurer would have had if not in liquidation, *including, but not limited to*," the enumerated rights. (*Ibid.*, italics added.)

A private insurer has a duty "to settle in an appropriate case." (*Comunale v. Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 659 [328 P.2d 198].) An insurer may incur liability for "unwarrantedly [refusing] an offered settlement where the most reasonable manner of disposing of the claim is by accepting the settlement." (*Crisci v. Security Ins. Co.* (1967) 66 Cal.2d 425, 430 [58 Cal.Rptr. 13, 426 P.2d 173].) Indeed, noting these two rules, the California Supreme Court has concluded, "CIGA's statutory duty to defend and pay 'covered claims' encompasses a duty to accept a reasonable settlement offer in appropriate cases." (*Isaacson, supra*, 44 Cal.3d at p. 792, fn. omitted.) Given this duty, we see no reason to conclude CIGA lacks statutory authority to investigate and assess its probable liability, factually and legally, for a presented claim and to accept a settlement offer it determines is reasonable. Allowing CIGA such authority is a reasonable construction of section 1063.2, subdivision (b).[5]

---

[5] CIGA cites *Pac. Inter-Club Yacht Assn. v. Richards* (1961) 192 Cal.App.2d 616, 619 [13 Cal.Rptr. 730], and *Air Quality Products, Inc. v. State of California* (1979) 96 Cal.App.3d 340, 349 [157 Cal.Rptr. 791], for the principle that all contracts entered into by the state or its agencies that are not authorized by statute are null and void. It is true "no contractual obligation may be enforced against a public agency unless it appears the agency was authorized by the Constitution or statute to incur the obligation; a contract entered into by a governmental entity without the requisite constitutional or statutory authority is void and unenforceable." (*Air Quality Products, Inc. v. State of California, supra*, at p. 349.) However, CIGA is not the state or one of its agencies, but a statutorily created involuntary association of

## B. *The WCAB Had Jurisdiction to Enter an Order Based on the 2001 Stipulations*

FFIC claims the 2001 order entered on the stipulations is entitled to res judicata effect. CIGA contends the order entered on the 2001 stipulations was void and therefore not entitled to collateral estoppel or res judicata effect. (*Rochin v. Pat Johnson Manufacturing Co.* (1998) 67 Cal.App.4th 1228, 1239 [79 Cal.Rptr.2d 719].)

The dispositive issue here is whether the WCAB, acting through a WCJ, lacks fundamental jurisdiction to enter an order on a stipulated settlement of a case involving CIGA under circumstances where the law is uncertain as to CIGA's liability at the time but is later determined to preclude CIGA's liability, or whether the entry of such an order is simply an act in excess of jurisdiction. We conclude the WCAB did not lack fundamental jurisdiction to enter the order. The order was not void, but at most an act in excess of jurisdiction. We explain.

 "A judgment is void if the court rendering it lacked subject matter jurisdiction or jurisdiction over the parties. Subject matter jurisdiction 'relates to the inherent authority of the court involved to deal with the case or matter before it.' [Citation.] Lack of jurisdiction in this 'fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties.' [Citation.]" (*Carlson v. Eassa* (1997) 54 Cal.App.4th 684, 691 [62 Cal.Rptr.2d 884]; accord, *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942] (*Abelleira*).) "Familiar to all lawyers are such examples as these: A state court has no jurisdiction to determine title to land located outside its territorial borders, for the subject matter is entirely beyond its authority or power. [Citation.] A court has no jurisdiction to adjudicate upon the marital status of persons when neither is domiciled within the state. [Citations.] A court has no jurisdiction to render a personal judgment against one not personally served with process within its territorial borders, under the rule of *Pennoyer* v. *Neff* [(1878)] 95 U.S. 714 [24 L.Ed. 565]. ([Citation], discussing modern exceptions to the rule.) A court has no jurisdiction to hear or determine a case where the type of proceeding or the amount in controversy is beyond the jurisdiction defined for that particular court by statute or constitutional

insurers that have been admitted to transact business in California (*Denny's Inc., supra,* 104 Cal.App.4th at p. 1438; *In re Imperial Ins. Co.* (1984) 157 Cal.App.3d 290, 293 [203 Cal.Rptr. 664]; see *Baur v. Workers' Comp. Appeals Bd.* (2009) 176 Cal.App.4th 1260, 1262, fn. 1 [98 Cal.Rptr.3d 493]), and we have concluded section 1063.2, subdivision (b), is reasonably interpreted to statutorily authorize the settlement at issue here. For the same reasons, we reject CIGA's argument that its stipulations were void by analogy to the law regarding the acts of administrative agencies outside the scope of their powers. (See *Ferdig v. State Personnel Bd.* (1969) 71 Cal.2d 96, 104 [77 Cal.Rptr. 224, 453 P.2d 728].)

provision. [Citation.]" (*Abelleira, supra,* at p. 288.) "The granting of relief, which a court under no circumstances has any authority to grant, has been considered an aspect of fundamental jurisdiction for the purposes of declaring a judgment or order void." (*Plaza Hollister Ltd. Partnership v. County of San Benito* (1999) 72 Cal.App.4th 1, 20 [84 Cal.Rptr.2d 715]; accord, *Thompson Pacific Construction, Inc. v. City of Sunnyvale* (2007) 155 Cal.App.4th 525, 538–539 [66 Cal.Rptr.3d 175].)

However, "[a] court does not necessarily act without subject matter jurisdiction merely by issuing a judgment going beyond the sphere of action prescribed by law. 'Speaking generally, any acts which exceed the defined power of a court in any instance, whether that power be defined by constitutional provision, express statutory declaration, or rules developed by the courts and followed under the doctrine of *stare decisis*, are in excess of jurisdiction . . . .' (*Abelleira, supra,* 17 Cal.2d at p. 291.) The distinction is critical, because '[a]ction "in excess of jurisdiction" by a court that has jurisdiction in the "fundamental sense" (i.e., jurisdiction over the subject matter and the parties) is not void, *but only voidable*. [Citations.]' " (*Pajaro Valley Water Management Agency v. McGrath* (2005) 128 Cal.App.4th 1093, 1101 [27 Cal.Rptr.3d 741]; see *Safer v. Superior Court* (1975) 15 Cal.3d 230, 242 [124 Cal.Rptr. 174, 540 P.2d 14].) Errors of substantive law are within the jurisdiction of a court and are not typically acts beyond the court's fundamental authority to act. (*Armstrong v. Armstrong* (1976) 15 Cal.3d 942, 950 [126 Cal.Rptr. 805, 544 P.2d 941].) For example, "a failure to state a cause of action [citation], insufficiency of evidence [citation], abuse of discretion [citation], and *mistake of law* [citations], have been held nonjurisdictional errors for which collateral attack will not lie. [Citation.]" (*Ibid.,* italics added.)

■ In this case, there is no dispute the WCAB had personal jurisdiction over the parties and general subject matter jurisdiction over Allen's claims to workers' compensation benefits for her injuries. The WCAB's express statutory authority to enter orders based on the parties' factual stipulations is also clear. (Lab. Code, § 5702.) In addition, at a mandatory settlement conference, the WCJ has the express "authority to resolve the dispute, including the authority to approve a compromise and release or issue a stipulated finding and award, and if the dispute cannot be resolved, to frame the issues and stipulations for trial." (Lab. Code, § 5502, subd. (e)(2).) ■ In fact, this court has concluded the WCAB may only reject a stipulation clarifying the issues in controversy for good cause. (*County of Sacramento v. WCAB (Weatherall), supra,* 77 Cal.App.4th at p. 1119.) Given this general statutory authority to enter judgments based on stipulations and settlement of the case, it appears the WCAB had jurisdictional authority to enter the 2001 order based on the parties' stipulations here.

To the extent the WCAB did not have the power to impose liability on CIGA for the future medical treatment award in this case (*CIGA v. WCAB (Hernandez)*, *supra*, 153 Cal.App.4th 524), the acceptance of the parties' stipulation in 2001 because of a mistake of law was at most an act in excess of its jurisdiction. It did not result in a *void* order.

## IV.

### The WCAB Improperly Exercised Its Discretion Under Labor Code Section 5803 to Set Aside the Order Entered on the Stipulations

■ "[Labor Code] [s]ection 5803 accords the board continuing jurisdiction to rescind or revise its awards, 'upon good cause shown.' Such cause may consist of newly discovered evidence previously unavailable, a change in the law, or '. . . any factor or circumstance unknown at the time the original award or order was made which renders the previous findings and award "inequitable." ' [Citations.] [¶] More specifically, an award based [on] an executed stipulation may be reopened and rescinded if the stipulation 'has been "entered into through inadvertence, excusable neglect, fraud, mistake of fact or law, where the facts stipulated have changed or there has been a change in the underlying conditions that could not have been anticipated, or where special circumstances exist rendering it unjust to enforce the stipulation." ' [Citation.]" (*Brannen v. Workers' Comp. Appeals Bd.* (1996) 46 Cal.App.4th 377, 382 [53 Cal.Rptr.2d 768]; see *Robinson, supra,* 194 Cal.App.3d at p. 791; *Huston v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 865–866 [157 Cal.Rptr. 355].)

CIGA's 2008 petition for change of administrator and dismissal did not argue any of these grounds for setting aside the 2001 stipulations. The petition merely cited *CIGA v. WCAB (Hernandez)*, *supra,* 153 Cal.App.4th 524, and argued CIGA was not liable for Allen's medical treatment award as FFIC was jointly and severally liable for those benefits.

■ "[A] subsequent clarification of the applicable law by a reviewing court which indicates that an employee was originally entitled to a different award than that given is 'good cause' to reopen a case and amend an award" under Labor Code section 5803. (*LeBoeuf v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 234, 241–242 [193 Cal.Rptr. 547, 666 P.2d 989], quoting *Knowles v. Workmen's Comp. App. Bd.* (1970) 10 Cal.App.3d 1027, 1030 [89 Cal.Rptr. 356]; *State Comp. Ins. Fund v. Ind. Acc. Com.* (1946) 73 Cal.App.2d 248, 257–259 [166 P.2d 310].) It is also generally recognized that good cause exists for reopening earlier cases to rectify " ' "mistakes of law" ' " made by

the WCAB. (*Ryerson Concrete Co. v. Workmen's Comp. Appeals Bd.* (1973) 34 Cal.App.3d 685, 688 [110 Cal.Rptr. 319].)

However, when parties knowingly take the risk of unsettled law and their settlement agreement reflects such basis for their settlement, the WCAB has held there is no good cause to reopen. (*Schroedel v. Workers' Comp. Appeals Bd.* (1997) 62 Cal.Comp.Cases 1173.)[6] "Good cause consists of some ground or evidence, not originally within the knowledge of the Board, which renders the requested action just and equitable. It cannot consist of a mere change of opinion." (*Schroedel*, at p. 1175.) Similarly, where parties knew or should have known the issue was then pending before an appellate court, the WCAB has held the parties' settlement cannot be reopened. (*Mackill v. Workers' Comp. Appeals Bd.* (2006) 71 Cal.Comp.Cases 1336.)

In this case, the stipulations and settlement were entered in apparent contemplation of the unsettled law regarding CIGA's liability. Nevertheless, the WCJ granted CIGA's petition to change administrator and dismiss on the basis that the 2001 stipulations were "illegal or contrary to public policy" and so "must [be] disregard[ed]." In his report and recommendation on FFIC's petition to the WCAB for reconsideration, the WCJ repeated the stipulations were illegal and contrary to public policy and that rejection of the stipulations resulted in a correct application of the law. The WCAB adopted the WCJ's reasoning in denying reconsideration.

We have not found the stipulations and order to have been "illegal" when they were entered, which leaves public policy as the remaining justification for the setting aside of the parties' 2001 stipulations and order so as to apply the current law regarding CIGA's liability. In some cases, the res judicata effect of a prior decision may be avoided if the question is one of law rather than fact and if either "injustice would result or if the public interest requires that relitigation not be foreclosed." (*Consumers Lobby Against Monopolies v. Public Utilities Com.* (1979) 25 Cal.3d 891, 902 [160 Cal.Rptr. 124, 603 P.2d 41].) Neither consideration requires that the 2001 stipulations and order be set aside here.

It is true a strong public policy exists in CIGA only paying "covered claims." "CIGA is not, and was not created to act as, an ordinary insurance company. [Citation.] It is a statutory entity that depends on the Guarantee Act for its existence and for a definition of the scope of its powers, duties, and protections. . . . 'CIGA is limited to the payment of "covered claims" . . . .'

---

[6] "Denials of petitions for writ of review reported in the California Compensation Cases are citable when they 'point out the contemporaneous interpretation and application of the workers' compensation laws by the Board.' [Citation.]" (*Baur v. Workers' Comp. Appeals Bd., supra*, 176 Cal.App.4th at p. 1265, fn. 3.)

[Citation.]" (*Isaacson, supra,* 44 Cal.3d at p. 786.) The Legislature has underscored this point in section 1063.12, subdivision (a), which states that CIGA "shall *under no circumstances* be liable for any sum in excess of the amount of covered claims of the insolvent insurer, as defined under subdivision (c) of Section 1063.1 of this article . . . ." (Italics added.)

■ We must weigh, however, this strong public policy limiting CIGA's liability to covered claims against the public policy interests in an expeditious and inexpensive system of workers' compensation, the encouragement of settlements of workers' compensation proceedings to further that system, the justified expectations of parties dealing with CIGA, the importance of there being an end to litigation, the resulting finality of judgments, and CIGA's role in obtaining the order at issue. (Rest.2d Contracts, § 178 [to determine whether a contract is unenforceable on grounds of public policy the interests for and against its enforcement must be weighed].) We conclude the admittedly strong public policy in favor of CIGA's paying only covered claims does not outweigh these other policy interests. In fact, the obverse is true.

■ We start with the proposition that "[t]he workers' compensation system is designed to assure benefits to injured workers without the need to resort to a lawsuit." (*County of Sacramento v. WCAB (Weatherall), supra,* 77 Cal.App.4th at p. 1116.) In fact, a legislative system of workers' compensation is constitutionally mandated "to the end that the administration of such legislation shall accomplish substantial justice in all cases *expeditiously, inexpensively, and without incumbrance of any character*; all of which matters are expressly declared to be the social public policy of this State, binding upon all departments of the state government." (Cal. Const., art. XIV, § 4, italics added.)

Settlement of workers' compensation cases furthers the *constitutional* public policy of expeditiously and inexpensively determining the benefits payable to an injured or disabled worker. The use of stipulations to settle disputes in workers' compensation proceedings, in turn, furthers this interest and is, therefore, to be encouraged. (*Robinson, supra,* 194 Cal.App.3d at p. 791.)

When parties stipulate and settle a workers' compensation case, they also have a justified interest in maintaining their resolution of the case. Of course, they settle with the knowledge of the WCAB's continuing jurisdiction to reopen and amend an award or order under Labor Code section 5803 for good cause and in the case of proceedings involving CIGA, parties are chargeable with the knowledge of CIGA's limited statutory authority to pay only covered claims. But where the law is unsettled regarding CIGA's liability, a party negotiating with CIGA should ordinarily be entitled to rely

on CIGA's reasoned evaluation of its own authority. If this were not the rule, then settlements involving CIGA would risk being meaningless and a prudent party knowing such risk would likely take all disputes to trial. Such a result could delay resolution of the case and impede the constitutional policy favoring expeditious and inexpensive determination of workers' compensation proceedings.

■ Moreover, there exists an important public policy that there be an end to litigation. "[H]ence it is the long established policy of the law to, so far as possible, prohibit the further contest of an issue once judicially decided . . . ." (*Sontag Chain Stores Co. v. Superior Court* (1941) 18 Cal.2d 92, 94 [113 P.2d 689] [distinguishing rule in case of a preventive injunction].) This policy underlies the well-established doctrine of finality of judgments. (*Estate of Prindle* (2009) 173 Cal.App.4th 119, 133 [92 Cal.Rptr.3d 504]; *Rogers v. Hirschi* (1983) 141 Cal.App.3d 847, 853 [190 Cal.Rptr. 575].) Such public policy interest becomes even stronger as time elapses from the entry of the judgment. (See *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 982 [35 Cal.Rptr.2d 669, 884 P.2d 126] ["exceptional circumstances" required for relief from a default judgment after time for relief under Code Civ. Proc., § 473 expires].)

■ Finally, it has been recognized that a party who has procured a judgment or permitted action that is in excess of the court's jurisdiction may properly be estopped from attacking the judgment. (*Kristine H. v. Lisa R.* (2005) 37 Cal.4th 156, 162 [33 Cal.Rptr.3d 81, 117 P.3d 690]; *Rogers v. Hirschi, supra*, 141 Cal.App.3d at p. 852.) We cannot ignore CIGA's part in obtaining the 2001 order by entering into the stipulations to settle its petition to change administrator and dismiss. No injustice results from requiring CIGA to abide by its own stipulations.

■ Under the circumstances present in this case, we conclude the WCAB improperly exercised its discretion under Labor Code section 5803 to set aside the order entered on the 2001 stipulations on the ground of illegality and public policy.

Given this conclusion, we need not address whether the WCAB's authority to set aside the stipulations and order was subject to the time restriction set forth in Labor Code section 5804. We shall annul the WCAB's order denying reconsideration and remand the matter to the WCAB for further proceedings.

## DISPOSITION

The order of the Workers' Compensation Appeals Board denying Fireman's Fund Insurance Company's petition for reconsideration is annulled and the matter is remanded to the Workers' Compensation Appeals Board for further proceedings consistent with this opinion. Costs are awarded to petitioner Fireman's Fund Insurance Company.

Sims, Acting P. J., and Butz, J., concurred.