[Civ. No. 53790. Second Dist., Div. Three. Aug. 7, 1979.]

JAMES H. HUSTON, Petitioner, v.
WORKERS' COMPENSATION APPEALS BOARD,
COAST ROCK et al., Respondents.

COUNSEL

Ghitterman, Schweitzer & Herreras and William A. Herreras for Petitioner.

Zonni, Ginocchio & Taylor, Clair S. Huffman and William B. Donohoe for Respondents.

OPINION

**ALLPORT, J.**—Petitioner James H. Huston, the injured worker herein, contends (1) the Workers' Compensation Appeals Board (Board) erred in

permitting respondent Fidelity & Casualty Company of New York (Fidelity), the workers' compensation insurance carrier for the employer, to repudiate a prior agreement as to payment of temporary disability and then take credit in the amount of the resulting overpayment against its other liability for workers' compensation benefits to Huston, and (2) the level of the permanent disability as determined by the Board is not supported by substantial evidence. We find merit in both contentions.

## I. *Summary of Proceedings Before the Appeals Board.*

Huston while employed on December 11, 1974, by respondent Coast Rock, insured by Fidelity, sustained injury to his back arising out of and occurring in the course of his employment. As a result of the industrial injury Huston underwent a laminectomy in June 1975. This surgery, however, did not entirely alleviate his back problem and Huston submitted to a second laminectomy in September 1976.

Apparently the last active medical treatment that Huston received was in December 1976. Morris H. Rivers, M.D., one of the treating physicians, in his report of March 9, 1977, indicated that he had last seen Huston on December 28, 1976, advised Huston to continue with physical therapy and told Huston to return for "recheck" examinations but Huston had not kept his appointments. Dr. Rivers, however, subsequently examined Huston on March 22, 1977.

Commencing in February 1977 through September 1977 Huston made four or five trips to Venezuela in pursuit of a job opportunity. Each trip lasted anywhere from three to ten days. The prospective employer was a corporation in the process of formation and was involved in the planning stage of an agricultural well drilling program. While in Venezuela Huston saw agricultural films regarding the project and drove around to possible drilling sites. Between trips to Venezuela Huston helped obtain equipment in the United States for his prospective employer. If this prospective employer's project had become a reality Huston would have had a supervisory position or would have been in "on the drilling." The prospective employer's project never, however, became a reality and Huston therefore obtained no actual employment as a result of his efforts. The prospective employer paid for Huston's travel expenses to Venezuela and paid for his food and lodging while there but Huston received no salary from the prospective employer.

Dr. Rivers reported on May 4, 1977, that he had seen Huston at a shopping mall about 10 days previously. Dr. Rivers also stated in his report: "[Huston] stated that he was back from Venezuela to get some equipment for his employer. He is apparently working in a supervisory or consulting capacity. He stated that he is still having some discomfort but that he was tolerating the job well. The patient had planned to return to Venezuela shortly." When Dr. Rivers was subsequently questioned concerning this report, he had no independent recollection of his conversation with Huston in this regard except that which was in his report of May 4, 1977.

Hal C. Gregg, M.D., Huston's reporting physician, in his report of April 7, 1977, stated that as Huston was only about six months postoperative of the surgery of September 1976 he was "still temporarily, totally disabled until his convalescence is completed." Regarding Huston's activities in Venezuela, Dr. Gregg stated: "At the present time, the patient is in Venezuela, to attempt to find work. If he were to find work, it would be entirely in a supervisory capacity. Thus, if the patient is successful in his search for work, he would then become permanent and stationary. Based on the factors of subjective disability and the objective factors of disability, including two back surgeries, the patient would have a disability which would limit him to light work, which type of work would be consistent with being a supervisor."

Huston's deposition was taken on May 12, 1977. Therein, Fidelity explored Huston's activities in Venezuela.

At the request of Huston a hearing was set before the appeals board on June 10, 1977. A hearing, however, did not occur at that time. The disposition of the matter, as stated in the Minutes of Hearing, prepared by the workers' compensation judge, was: "GOOD CAUSE APPEARING THEREFOR: IT IS ORDERED that the above entitled case be taken off calendar. Defendant [Fidelity] to pick up temporary disability and will file a Petition to Terminate." Thereafter, Fidelity continued to pay Huston temporary disability through November 30, 1977, at the rate of $119 per week.[1]

---

[1]Fidelity paid temporary disability to Huston from December 12, 1974, through November 30, 1977, in the total sum of $18,105. There is no challenge before this court as to Huston's entitlement to temporary disability through April 7, 1977.

In October 1977 Huston began self-employment as a long-haul trucker between Long Beach and Lompoc, California. This activity occurred three or four days a week.

On October 12, 1977, Reo D. Reiswig, M.D., another treating physician, reported that Huston was permanent and stationary.[2] Dr. Reiswig stated that Huston's "working in Venezuela as a supervisor does not take away from his physical impairments." As to permanent disability Dr. Reiswig opined that Huston "should be limited to semi-sedentary type work[3] at best" but acknowledged that "[p]resently he is working in a capacity of being able to do light work[4] although this has been somewhat difficult for him to do."[5]

Dr. Rivers reported on November 9, 1977, that he had last seen Huston when Huston had planned to return "to his job in Venezuela." Dr. Rivers believed that Huston's "condition was now permanent and stationary" and that Huston "was instructed to avoid heaving [sic] lifting."[6]

On December 7, 1977, Fidelity filed and served by mail a petition to terminate liability for temporary disability indemnity (hereinafter Petition to Terminate) (DIA/WCAB Form 46 (Rev. 4-74); for the suggested

---

[2]"A disability is considered permanent after the employee has reached maximum improvement, or his condition has been stationary for a reasonable period of time, as may be determined by the Appeals Board or a [workers' compensation judge]." (WCAB Rules of Practice & Proc. (Cal. Admin. Code, tit. 8, ch. 4.5, subch.2) § 10900.)

[3]"*Disability Resulting in Limitation to semi-Sedentary work* contemplates the individual can do work approximately one half the time in a sitting position, and approximately one half the time in standing or walking position, with a minimum of demands for physical effort whether standing, walking or sitting." (Schedule for Rating Permanent Disabilities Under the Provisions of the Labor Code of the State of California (hereinafter Rating Schedule), Guidelines for Work Capacity, p. 1-A; see *Mihesuah* v. *Workers' Comp. Appeals Bd.* (1976) 55 Cal.App.3d 720 [127 Cal.Rptr. 688].) A limitation to semi-sedentary work is a 60 standard rating. (*Johns-Manville Products Corp.* v. *Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 740, 750-751, fn. 6 [151 Cal.Rptr. 215].)

[4]"*Disability Resulting in Limitation to Light Work* contemplates the individual can do work in a standing or walking position, with a minimum of demands for physical effort." (Rating Schedule, Guidelines for Work Capacity, p. 1-A.) A light work limitation is a 50 standard rating. (*Johns-Manville Products Corp., supra,* 87 Cal.App.3d 740, at pp. 750-751, fn. 6.)

[5]Exactly when Dr. Reiswig last examined Huston is unclear. Dr. Reiswig's report of October 12, 1977, does not indicate he had examined Huston at the time of this report. Dr. Reiswig's last previous report is dated March 10, 1977, and does indicate Huston was examined at that time.

[6]"*Disability Precluding Heavy Lifting* contemplates the individual has lost approximately half of his pre-injury capacity for lifting." (Rating Schedule, Guidelines for Work Capacity, p. 1-A.) A disability precluding heavy lifting is a 20 standard rating. (*Johns-Manville Products Corp., supra,* 87 Cal.App.3d at pp. 750-751, fn. 6.)

form see WCAB Rules of Practice & Proc., § 10468).[7] The Petition to Terminate stated that Fidelity had last paid temporary disability on November 30, 1977, and indicated that the actual termination of Huston's temporary disability would be "subject to proof." Huston immediately requested a hearing on all issues, including temporary disability, and also pleaded "estoppel for credit against any claimed overpayment of temporary disability."

The matter was then set for hearing on February 3, 1978. At the hearing Fidelity claimed "[c]redit for temporary disability paid after April 7, 1977, based on Dr. Gregg's report [of the same date]." Huston pleaded estoppel against Fidelity to claim credit for temporary disability after April 7, 1977.

Also at the hearing of February 3, Dr. Rivers testified that based upon Dr. Reiswig's report of October 12, 1977, he was now of the opinion that as to permanent disability Huston "should be limited to somewhere between light work and semi-sedentary work." Dr. Rivers, however, admitted that he had not examined Huston since March 1977. Huston testified that his back condition has stayed the same since April 7, 1977. Huston also stated that he was last examined by Dr. Rivers in March 1977 and he did not return to see Dr. Rivers as it "was like a release" the last time Huston saw Dr. Rivers.

Based upon Dr. Gregg's report of April 7, 1977, and Huston's testimony the workers' compensation judge found that Huston's condition became permanent and stationary on April 7, 1977, and Huston's permanent disability was a limitation to light work. The judge held that Fidelity was entitled to credit against other benefits (presumably the awarded permanent disability) for the "overpayment" of temporary disability (i.e., temporary disability paid after April 7, 1977). The judge ruled that there was no basis for estoppel against Fidelity to claim credit for an overpayment.[8]

Huston then sought reconsideration by the Board. He challenged the judge's ruling on the overpayment of temporary disability. Huston also contended that substantial evidence did not support the judge's finding on permanent disability. Huston also asserted that his permanent disability was greater than that found by the judge.

---

[7]The appeals board received the petition on December 8, 1977.

[8]The workers' compensation judge who issued this findings and award was the same judge before whom the June 10, 1977, hearing was scheduled.

In a three-member panel decision the Board denied reconsideration, one panel member dissenting. The dissenting member opined that Huston had been temporarily disabled until November 9, 1977 (based upon Dr. Rivers' report of that date) and that Huston's permanent disability should have been rated at a 55 standard (a rating between a limitation to light work and semisedentary work restriction) rather than the light work (a 50 standard) as determined by the workers' compensation judge.

## II. *Discussion.*

Huston contends: (1) the Board erred in permitting Fidelity to disavow the agreement made between Huston and Fidelity at the June 10, 1977, hearing pertaining to the payment of temporary disability; (2) Fidelity should not have been permitted to take credit for any overpayment of temporary disability as the result of the repudiation of the agreement; and (3) substantial evidence does not support the level of permanent disability as determined by the Board, since his permanent disability is greater.

### A. *Temporary Disability Agreement.*

Of crucial importance here is what was the nature and effect of the agreement between Huston and Fidelity at the June 10, 1977, hearing which provided that Fidelity would pay "temporary disability and will file a Petition to Terminate."

In its brief Fidelity asserts the "record shows there was only an informal agreement between the parties" and that "[t]here was no stipulation." We cannot agree. The situation here is decidedly different from an agreement made outside the presence of and not submitted to the appeals board. The entry of this agreement in the appeals board minutes of hearing establishes a formal agreement between the parties in the form of a stipulation. Also of importance is that at the February 3, 1978, hearing Fidelity offered no evidence (such as by affidavit) to show that the agreement as recorded in the minutes of hearing for June 10, 1977, was incorrect. The mere argument by Fidelity that there was no formalized agreement is not evidence. (See *Beagle* v. *Vasold* (1966) 65 Cal.2d 166, 176 [53 Cal.Rptr. 129, 417 P.2d 673]; compare *Roscoe Moss Co.* v. *Roggero* (1966) 246 Cal.App.2d 781 [54 Cal.Rptr. 911].)

Labor Code[9] section 5702[10] establishes that "While stipulations between adversary parties concerning the existence or nonexistence of material facts are permissible in workmen's compensation cases, the stipulations are not binding on the appeals board or the [workers' compensation judge]; the board or [workers' compensation judge] . . . may reject a stipulation and base the decision on the evidence presented at the hearing. (Lab. Code, § 5702; *Frankfort General Ins. Co.* v. *Pillsbury,* 173 Cal. 56, 58 [159 P. 150]; *Pacific Indemnity Co.* v. *Ind. Acc. Com.,* 86 Cal.App.2d 726, 735 [195 P.2d 919]; *Ocean A. & G. Corp.* v. *Indus. Acc. Com.,* 88 Cal.App. 369, 371 [263 P. 823].)" (*Turner Gas Co.* v. *Workmen's Comp. Appeals Bd.* (1975) 47 Cal.App.3d 286, 290-291 [120 Cal.Rptr. 663].)

*Frankfort General Ins. Co.* v. *Pillsbury* (1916) 173 Cal. 56 [159 P. 150]; *Turner Gas Co.* v. *Workmen's Comp. Appeals Bd., supra,* 47 Cal.App.3d ?86; *Pacific Indemnity Co.* v. *Ind. Acc. Com.* (1948) 86 Cal.App.2d 726 [195 P.2d 919], and *Ocean A. & G. Corp.* v. *Indus. Acc. Com.* (1928) 88 Cal.App. 369 [263 P. 823] all recognize the power of the workers' compensation judge to disregard stipulations of *material facts* made by the parties.[11] Here, the stipulation provided for the payment of benefits and payments were actually made pursuant to the stipulation. Thus, the stipulation was transformed from an *executory agreement* to an *executed contract.*[12] (See *Cathcart* v. *Gregory* (1941) 45 Cal.App.2d 179 [113 P.2d 894]; see also *Harris* v. *Spinali Auto Sales, Inc.* (1966) 240 Cal.App.2d 447 [49 Cal.Rptr. 610]; *L.A. City Sch. Dist.* v. *Landier Inv. Co.* (1960) 177 Cal.App.2d 744 [2 Cal.Rptr. 662].)

There being an executed agreement, Fidelity must show some "good cause" to be released from the stipulation. (*Harris, supra,* 240 Cal.App.2d at p. 452.) ■ Where a stipulation has been "entered into through inadvertence, excusable neglect, fraud, mistake of fact or law, where the

[9]Hereinafter, unless specified to the contrary all references will be to the Labor Code.

[10]Section 5702 provides: "The parties to a controversy may stipulate the facts relative thereto in writing and file such stipulation with the appeals board. The appeals board may thereupon make its findings and award based upon such stipulation, or may set the matter down for hearing and take further testimony or make the further investigation necessary to enable it to determine the matter in controversy."

[11]There is no allegation that Fidelity's counsel had no authority to enter into the agreement. (See Code Civ. Proc., § 283.) Fidelity's payment of temporary disability would, in any event, be a ratification of the agreement.

[12]The consideration for the agreement to pay benefits and file a petition to terminate was the taking of the hearing off calendar. (Huston otherwise had the right to have the appeals board determine his entitlement to benefits at the June 10, 1977, hearing.)

facts stipulated have changed or there has been a change in the underlying conditions that could not have been anticipated, or where special circumstances exist rendering it unjust to enforce the stipulation," a court may exercise its sound discretion and set aside the stipulation. (*L.A. City Sch. Dist.* v. *Landier Inv. Co., supra,* 177 Cal.App.2d at p. 750; see also Code Civ. Proc., § 473; *In re Marriage of Carter* (1971) 19 Cal.App.3d 479, 488-489 [97 Cal.Rptr. 274]; *Harris, supra.*) But, "[w]hen there is no mistake but merely a lack of full knowledge of the facts, which . . . is due to the failure of a party to exercise due diligence to ascertain them, there is no proper ground for relief." (*Harris, supra,* 240 Cal.App.2d at p. 454.)

Here, at the time of the June 10, 1977 hearing, Fidelity was well aware of Huston's trips to Venezuela, his missed medical appointments and Dr. Gregg's report of April 7, 1977. Fidelity took Huston's deposition prior to the hearing set for June 10, 1977. Further, prior to the June hearing Fidelity certainly could have obtained a medical opinion[13] as to whether Huston was permanent and stationary, temporarily partially disabled[14] or temporarily totally disabled.[15]

 It is generally true that in voluntarily paying compensation, the employer and/or his carrier do not thereby admit that he is under any legal obligation to pay or continue to pay benefits. (§ 4909; see *Herrera* v. *Workmen's Comp. App. Bd.* (1969) 71 Cal.2d 254, 258 [78 Cal.Rptr. 497, 455 P.2d 425]; *Reiman* v. *Workers' Comp. Appeals Bd.* (1977) 66 Cal.App.3d 732, 742 [136 Cal.Rptr. 218].)[16] "[Section 4909] is designed to protect the employer who might make such payments by mistake for a non-industrial condition and to encourage prompt payments of benefits." (1 Herlick, Cal. Workers' Compensation Law Handbook (2d ed. 1978) § 6.16.) Thus, the appeals board may allow the employer and/or his carrier a credit for benefits voluntarily paid in error even if there was negligence. Here, however, Fidelity paid the benefits pursuant to a stipulation entered into the appeals board minutes.

---

[13]Where an injured worker fails or refuses to submit to medical treatment or medical examination, the employer is not without a remedy. (See §§ 4050, 4053, 4054, 4056.) Fidelity, it appears, chose not to exercise its rights in this regard.

[14]"Temporary partial disability exists during those periods in the convalescence of the employee when he is able to perform some work." (2 Hanna, Cal. Law of Employee Injuries and Workmen's Compensation (2d rev. ed. 1979) § 13.01 [3].)

[15]"Temporary disability, is 'total' when it produces complete, or a substantially complete, cessation of earning power." (2 Hanna, *supra,* § 13.01 [2].)

[16]Section 4909 provides: "Any payment, allowance, or benefit received by the injured employee during the period of his incapacity, or by his dependents in the event of his

■ Accordingly, there is no basis for releasing Fidelity from the fully executed agreement. The stipulation is therefore to be enforced.[17] To give enforcement to the stipulation it must be treated as if it were a formal findings and award issued by the appeals board.

By virtue of the stipulation, Huston must be considered to have been entitled to temporary disability at least up until the June 10, 1977, hearing. The contrary may only be found if Fidelity can demonstrate newly discovered evidence on the issue since the June 10, 1977, hearing; thus, Fidelity must attempt to "petition to reopen" the issue for good cause. (See §§ 5803, 5804; *Walters* v. *Industrial Acc. Com.* (1962) 57 Cal.2d 387 [20 Cal.Rptr. 7, 369 P.2d 703]; *Clendaniel* v. *Ind. Acc. Com.* (1941) 17 Cal.2d 659 [111 P.2d 314]; *Merritt-Chapman & Scott Corp.* v. *Indus. A.C.* (1936) 6 Cal.2d 314 [57 P.2d 501]; *Bartlett Hayward Co.* v. *Indus. Acc. Com.* (1928) 203 Cal. 522, 532 [265 P. 195].)[18]

In the present record the only additional evidence since the hearing of June 10, 1977, is Dr. Reiswig's report of October 12, 1977, Dr. River's report of November 9, 1977, and his testimony at the hearing of February 3, 1978, and Huston's testimony at the February 3, 1978, hearing . Neither Dr. Rivers nor Dr. Reiswig say anything helpful to Fidelity's position as to temporary disability on or before June 10, 1977. The appeals board placed reliance upon Huston's statement that his condition on February 3, 1978, was unchanged from April 7, 1977. Assuming (without deciding) that this may be considered "newly discovered evidence" sufficient to reopen a prior decision, such statement is of no help to Fidelity.

■ The statement by Huston that his condition has been unchanged since April 7, 1977, *by itself,* is not determinative of temporary disability as it is not a medical opinion of his status. While he felt no change, he still might have been in his "healing period." (*Bstandig* v. *Worker's Comp. Appeals Bd.* (1977) 68 Cal.App.3d 988, 995-996 [137 Cal.Rptr. 713].)

---

death, which by the terms of this division was not then due and payable or when there is any dispute or question concerning the right to compensation, shall not, *in the absence of any agreement,* be an admission of liability for compensation on the part of the employer, but any such payment, allowance, or benefit may be taken into account by the appeals board in fixing the amount of the compensation to be paid. The acceptance of any such payment, allowance, or benefit shall not operate as a waiver of any right or claim which the employee or his dependents has against the employer." (Italics added.)

[17]The stipulation here is neither illegal nor in violation of public policy.

[18]Since there exists no "good cause" to set aside the stipulation, the only "good cause" concept under sections 5803 and 5804 available would be newly discovered evidence.

Medical evidence must support a finding of permanent and stationary status. (*Ibid.*)

The judge claimed such medical support for a finding of permanent and stationary status as of April 7, 1977, in Dr. Gregg's report of that date. Reliance on Dr. Gregg cannot withstand analysis. First, the judge improperly relied only on part of Dr. Gregg's report. (*Franklin* v. *Workmen's Comp. Appeals Bd.* (1971) 18 Cal.App.3d 682, 684 [96 Cal.Rptr. 201]; *Luchini* v. *Workmen's Comp. App. Bd.* (1970) 7 Cal.App.3d 141, 145, fn. 2 [86 Cal.Rptr. 453].) Dr. Gregg also indicated that as of April 7, 1977, Huston was still totally temporarily disabled. ■ Further, Dr. Gregg's statement that Huston would be permanent and stationary status if Huston found work is not substantial evidence as it is based upon the erroneous theory (*Hegglin* v. *Workmen's Comp. App. Bd.* (1971) 4 Cal.3d 162, 169 [93 Cal.Rptr. 15, 480 P.2d 967]; *Place* v. *Workmen's Comp. App. Bd.* (1970) 3 Cal.3d 372, 378 [90 Cal.Rptr. 424, 475 P.2d 656]) that temporary disability status is automatically changed to permanent and stationary status by the mere finding of employment.

■ In general, temporary disability indemnity is payable during the injured worker's healing period from the injury until the worker has recovered sufficiently to return to work, or until his/her condition reaches a permanent and stationary status. (See 2 Hanna, *supra,* § 13.02.) Temporary disability may be total (incapable of performing *any* kind of work), or *partial* (capable of performing *some* kind of work). (2 Hanna, *supra,* § 13.02 [2], [3].) If the employee is able to obtain some type of work despite the partial incapacity, the worker is entitled to compensation on a wage-loss basis. (§ 4657.) If the partially disabled worker can perform some type of work but chooses not to, his "probable earning ability" will be used to compute wage-loss compensation for partial disability. (*Ibid.*) If the temporary partial disability is such that it effectively prevents the employee from performing any duty for which the worker is skilled or there is no showing by the employer that work is available and offered, the wage loss is deemed *total* and the injured worker is entitled to temporary total disability payments. (*Pacific Employers Ins. Co.* v. *Industrial Acc. Com.* (1959) 52 Cal.2d 417 [340 P.2d 622]; *Transport Indemn. Co.* v. *Ind. Acc. Com.* (1958) 157 Cal.App.2d 542 [321 P.2d 21].)

Thus, Dr. Gregg's statement that temporary disability turns to permanent and stationary status merely upon the finding of employment is legally incorrect. ■ Permanent and stationary status refers to medical rehabilitation from an injury, not the ability to work. For the same

reasons, irrespective of the stipulation, substantial evidence would not support a finding that Huston was permanent and stationary as of April 7, 1977.

Huston's entitlement to temporary disability after June 10, 1977, must be considered in light of the second part of the stipulation which provided that Fidelity agreed to file a "Petition to Terminate." The obvious meaning of this is that Fidelity, when terminating temporary disability benefits, agreed to be subject to and comply with section 4651.1[19] and WCAB Rules of Practice and Procedure (WCAB Rules), sections 10462[20] and 10464.[21] Accordingly, temporary disability status after June 10, 1977, must be determined with reference to these provisions.

■ Section 4651.1 establishes a *rebuttable* presumption that temporary disability continues for one week after the filing of the petition to terminate. Section 4651.1 also provides that "Where the employee has

[19]Section 4651.1 provides: "Where a petition is filed with the appeals board concerning a continuing award of such appeals board, in which it is alleged that the disability has decreased or terminated, there shall be a rebuttable presumption that such temporary disability continues for at least one week following the filing of such petition. In such case, payment for such week shall be made in accordance with the provisions of Sections 4650 and 4651 of this code. [¶] Where the employee has returned to work at or prior to the date of such filing, however, no such presumption shall apply. [¶] . . . ."

[20]WCAB Rules: "§ 10462. Petition to Terminate Liability Must Be Filed. A petition to terminate liability for continuing disability payments or other compensation benefits under a findings and award, decision or order of the Appeals Board or referee must be filed within ten (10) days of the termination of disability payments or the furnishing of other compensation benefits."

[21]WCAB Rules: "§ 10464. Petition to Terminate, Requirements of. Petition to terminate liability for temporary total disability shall conform substantially to the suggested form set forth below at Rule 10468 and shall show:

"(a) Correct title and date of filing of the prior order or decision, liability under which is sought to be terminated;

"(b) The amount of disability indemnity which has been paid;

"(c) The date to which payment has been made;

"(d) The date upon which it is claimed that liability terminated;

"(e) The grounds on which it is claimed liability should be terminated.

"(f) Whether or not permanent disability indemnity is being advanced, and if so the approximate date to which such indemnity will be paid;

"(g) Whether or not according to petitioner's information applicant is presently working;

"(h) Proof of service upon the opposing parties; and

"(i) That all medical reports in the possession of petitioner, his attorneys or agents, and not previously served and filed, accompany the petition.

"(j) That an order terminating liability will issue unless objection thereto is made on behalf of the employee within fourteen days after service of the petition, such information to appear in underlined capital letters on the petition."

returned to work at or prior to the date of such filing, however, no such presumption shall apply."

Thus, in determining Huston's entitlement to temporary disability after June 10, 1977, the Board should consider that in October 1977 Huston began self-employment as a trucker. Prior to October 1977, Fidelity has the burden to demonstrate Huston was *not* temporarily disabled. For the period after Huston began self-employment, it is Huston's burden to demonstrate some basis for entitlement to temporary disability benefits (perhaps temporary *partial* disability).

Of importance to a determination of Huston's entitlement to temporary disability after June 10, 1977, is when he became permanent and stationary. As stated, *ante* pages 867, 868 herein, there may be no reliance on Dr. Gregg to find the date of permanent and stationary status by virtue of the stipulation and since Dr. Gregg's report of April 7, 1977, would not, in any event, constitute substantial evidence.

The only other medical evidence on the permanent and stationary question is Dr. Reiswig's report of October 12, 1977, and Dr. Rivers' report of November 9, 1977. Dr. Rivers' report and testimony may be subject to question as it was not based upon a recent physical examination of Huston. (See *Redner* v. *Workmen's Comp. Appeals Bd.* (1971) 5 Cal.3d 83, 96, fn. 15 [95 Cal.Rptr. 447, 485 P.2d 799].) Dr. Reiswig's report of October 12, 1977, may similarly be questioned, as it is unclear whether that report is based upon a recent physical examination. Further, while Dr. Reiswig says he "presently" views Huston as permanent and stationary, he offers no opinion on whether Huston was permanent and stationary before then.

In any event, Huston's entitlement to temporary disability after June 10, 1977, is a factual matter for the Board to determine on remand in light of the court's decision herein.[22] We wish to reiterate, however, that in no case may the temporary disability be ordered terminated prior to June 10, 1977.

If the Board on remand finds that temporary disability in fact ended prior to November 30, 1977, which is the last date Fidelity actually paid temporary disability, the allowance of credit to Fidelity for the resulting overpayment of temporary disability should be made only after consider-

---

[22]On remand the Board is, of course, entitled to order further proceedings including the taking of further evidence.

ation has been given to such matters as (1) the circumstances surrounding the stipulation, (2) section 4651.1, (3) the policy concept of section 4909, (4) the manner in which section 4650 requires temporary disability be paid, (5) the nature of the physician reporting process, and (6) the relative equitable positions of the parties.

B. *Permanent Disability Award.*

In finding that Huston was limited to light work the judge relied upon Dr. Gregg's report of April 7, 1977. For the same reasons that Dr. Gregg's report does not constitute substantial evidence for a permanent and stationary finding, his report is not substantial evidence of permanent disability. Accordingly, on remand the Board must also reconsider this issue.

III. *Disposition.*

The Board's order denying reconsideration is annulled and the matter remanded for further proceedings consistent with the court's opinion herein.

Cobey, Acting P. J., and Potter, J., concurred.