[No. C065944. Third Dist. June 26, 2012.]

MEEKS BUILDING CENTER et al., Petitioners, v.
WORKERS' COMPENSATION APPEALS BOARD and SALEM NAJJAR,
Respondents.

**COUNSEL**

Lenahan, Lee, Slater, & Pearse and Jeana B. Pipkin for Petitioners.

No appearance for Respondent Workers' Compensation Appeals Board.

Mastagni, Holstedt, Amick, Miller & Johnsen, Gabriel R. Ullrich and John R. Holstedt for Respondent Salem Najjar.

## OPINION

**RAYE, P. J.**—In this case, we determine whether the single payment of benefits required by Labor Code section 4600, subdivision (e)(1) for attending a defense-requested qualified medical evaluation commences the limitation period for payment of temporary disability benefits under Labor Code section 4656, subdivision (c)(1).[1] Finding this is not a payment of temporary disability benefits, but a reimbursement of a medical-legal expense, we conclude it does not.

## RELEVANT FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Applicant and respondent Salem Najjar worked as a paint sales associate at Meeks Building Center through June 12, 2007. In the course of his employment, he sustained a cumulative injury to his low back, neck, and left shoulder. Despite his injuries, Najjar continued to work unrestricted at his usual job activities. Petitioner Zurich American Insurance Company (Zurich) sent Najjar to a qualified medical evaluation with Dr. Anthony Bellomo on September 11, 2007. Pursuant to section 4600, subdivision (e)(1), Zurich paid Najjar temporary disability indemnity of $64.71 to reimburse him for wages lost due to attending this evaluation.[2]

Dr. Bellomo felt Najjar would benefit from physical therapy and referral to a specialist. He anticipated Najjar would be permanent and stationary within two to three months. Dr. Bellomo did not take Najjar off work or impose work restrictions.

In 2009 Najjar was determined to be temporarily disabled and restricted from work. Accordingly, Zurich began making temporary disability benefit payments. Those payments commenced on March 17, 2009, and continued through September 8, 2009. Zurich ceased temporary disability payments in September 2009, claiming that pursuant to section 4656, subdivision (c)(1), Najjar was not entitled to further temporary disability benefits as the limitations period on those benefits had commenced with the September 11, 2007,

---

[1] All further statutory references are to the Labor Code unless otherwise designated.

[2] Section 4600, subdivision (e)(1) provides: "When at the request of the employer, the employer's insurer, the administrative director, the appeals board, or a workers' compensation administrative law judge, the employee submits to examination by a physician, he or she shall be entitled to receive, in addition to all other benefits herein provided, all reasonable expenses of transportation, meals, and lodging incident to reporting for the examination, together with one day of temporary disability indemnity for each day of wages lost in submitting to the examination."

temporary disability payment.[3] Najjar disputed the termination of temporary disability payments and filed a declaration of readiness to proceed, claiming the first temporary disability payment under section 4656, subdivision (c)(1) was made on March 17, 2009.

Following an expedited hearing, the workers' compensation judge (WCJ) found that temporary disability payments had commenced on September 11, 2007. Therefore, the dictates of section 4656, subdivision (c)(1) precluded Najjar from receiving temporary disability payments after September 9, 2009. The WCJ noted that section 4656, subdivision (c)(1) expressly limits the duration of temporary disability payments to a period not exceeding " 'more than 104 compensable weeks within a period of two years from the date of commencement of temporary disability payment.' " The WCJ reasoned that since section 4600, subdivision (e)(1) required Zurich to pay all reasonable expenses related to the qualified medical examination " 'together with one day of temporary disability indemnity for each day of wages lost in submitting to the examination,' " the temporary disability payments to Najjar had commenced on September 11, 2007, and began the running of the limitations period set forth in section 4656, subdivision (c)(1). (Underscoring omitted.) Accordingly, the WCJ found Najjar was precluded from receiving further temporary disability benefits.

Najjar petitioned the Workers' Compensation Appeals Board (WCAB) for reconsideration of the decision, contending the WCJ had misconstrued section 4656, subdivision (c)(1)'s limitations period. The WCAB concluded that "the mandated payment for attending a [qualified medical evaluation] exam is not the equivalent of commencing temporary disability payments." The WCAB held that the September 11, 2007, payment pursuant to section 4600, subdivision (e)(1) "was not a payment of temporary disability within the meaning of Labor Code section 4656(c)(1) and did not trigger the commencement of the 104 week limitation period." The WCAB granted Najjar's petition for reconsideration and rescinded the findings of fact and order of the WCJ. Because the WCAB could not determine on the record before it when temporary disability payments had in fact commenced, the matter was remanded.

Zurich's petition for a writ of review followed. We granted review and now affirm the WCAB's decision.

---

[3] Section 4656, subdivision (c)(1) provides: "Aggregate disability payments for a single injury occurring on or after April 19, 2004, causing temporary disability shall not extend for more than 104 compensable weeks within a period of two years from the date of commencement of temporary disability payment."

## DISCUSSION

■ In this case, there are no material facts in dispute; the issue presents a pure question of law. While statutory interpretation claims are reviewable by this court de novo, we accord significant respect to the WCAB's conclusions unless they are clearly erroneous. (*Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281, 1290 [135 Cal.Rptr.2d 665, 70 P.3d 1076] (*Lauher*).) We are also bound by the rule that "[a]s with other workers' compensation provisions, statutes regarding temporary disability are construed liberally in favor of granting benefits to injured workers. (§ 3202; *Lauher, supra*, 30 Cal.4th at p. 1290.)" (*Brooks v. Workers' Comp. Appeals Bd.* (2008) 161 Cal.App.4th 1522, 1528 [75 Cal.Rptr.3d 277] (*Brooks*).)

■ When an industrial injury causes an employee to be restricted from working, either totally or partially, the employee may be entitled to receive temporary disability indemnity. (§§ 4650, 4653, 4654, 4655.) The purpose of temporary disability indemnity is to provide interim wage replacement assistance to an injured worker during the period of time he or she is healing and incapable of working. (*Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 753 [7 Cal.Rptr.2d 808, 828 P.2d 1195] (*Livitsanos*); *Gamble v. Workers' Comp. Appeals Bd.* (2006) 143 Cal.App.4th 71, 79 [49 Cal.Rptr.3d 36] (*Gamble*).) The employer's obligation to pay temporary disability benefits is tied to the employee's "actual incapacity to perform the tasks usually encountered in one's employment and the wage loss resulting therefrom." (*Allied Compensation Ins. Co. v. Industrial Acc. Com.* (1963) 211 Cal.App.2d 821, 831 [27 Cal.Rptr. 918] (*Allied Compensation*).)[4] Relatedly, the obligation to pay temporary disability indemnity "ends when the injured employee either returns to work [citations] or is deemed able to return to work [citation], or when the employee's medical condition achieves permanent and stationary status [citations]." (*Lauher, supra*, 30 Cal.4th at p. 1292; see *Huston v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868 [157 Cal.Rptr. 355]; § 4651.1.) The rate at which temporary disability indemnity benefits are paid is set by statute. (§§ 4653, 4654, 4655.) The duration of an employer's temporary disability obligation is also limited by the statutory caps found in section 4656, as relevant here: "Aggregate disability payments for a single

---

[4] Zurich claims *Allied Compensation* defines "disability" as "(1) actual incapacity to perform the tasks usually encountered in one's employment and the wage loss resulting therefrom, and (2) physical impairment of the body that may *or may not be* incapacitating." Based on that definition of disability, Zurich argues an actual physical incapacity to work is not required. As related to the general definition of disability in the workers' compensation setting, it is true there need not be an actual incapacity to work if there is physical impairment of the body. However, as *Allied Compensation* makes clear, "in matters pertaining to temporary disability only, the issue of 'incapacity' or 'wage loss' is of dominant importance." (*Allied Compensation, supra*, 211 Cal.App.2d at p. 831.)

injury . . . causing temporary disability shall not extend for more than 104 compensable weeks within a period of two years from the date of commencement of temporary disability payment." (§ 4656, subd. (c)(1).)

Zurich contends the payment of "temporary disability" under section 4600 is the same as any other temporary disability payment because it is intended to compensate the injured worker for lost wages during a period of temporary inability to work caused by injury. Zurich goes on to contend Najjar was unable to work on September 11, 2007, due to his injury because of his required attendance at the qualified medical evaluation.

To support its claim, Zurich relies, as did the WCJ, on *Mt. Diablo Unified School Dist. v. Workers' Comp. Appeals Bd.* (2008) 165 Cal.App.4th 1154 [81 Cal.Rptr.3d 597] (*Mt. Diablo*) and *Brooks, supra*, 161 Cal.App.4th 1522. This reliance is misplaced. In *Brooks*, the injured worker was off work due to industrial injury and was receiving industrial disability leave benefits under the Government Code. This benefit had been statutorily defined as the equivalent of temporary disability benefits. Accordingly, the payment of industrial disability leave triggered the cap of Labor Code section 4656. (*Brooks*, at pp. 1526–1527.) In *Mt. Diablo*, the injured worker was off work due to an industrial injury and was receiving a full wage benefit under the Education Code. The full wage payment consisted of both accrued leave benefits and temporary disability benefits. (*Mt. Diablo*, at pp. 1157–1158.) Because the full wage payment included temporary disability benefits, the date of the first payment of the full wage benefit had to be the same as the date of the first payment of temporary disability. (*Id.* at p. 1159.) Accordingly, the cap of section 4656 was triggered. As noted by the WCAB in each of these cases, there was no question the injured workers' injuries had caused an incapacity to work for which they were receiving wage replacement benefits. In both cases, the employee was entitled to specific benefits under the Government and Education Codes. The question in both instances was whether payment of the temporary disability benefits provided for in the Education and Government Codes also triggered the statutory cap on temporary disability benefits under the Labor Code. Because the benefits in question served the same purpose as temporary disability benefits under the Labor Code, that is, they were intended to replace wages during a period of incapacity to work, the benefits triggered the limitations period.

By contrast, here, as of September 11, 2007, Najjar's injuries had not *caused* temporary disability; that is, his injuries had not incapacitated him or restricted him in any way from performing his usual work duties and he was not missing work because of his injuries. The only reason he lost time from work on September 11, 2007, was to attend a qualified medical evaluation to resolve this claim.

■ Section 4600 delineates the requirements of the employer in providing treatment for the injured worker and the injured worker's rights with respect to that treatment. The section also provides that if the injured worker submits to a requested qualified medical examination to resolve a claim, the worker is entitled "in addition to all other benefits herein provided, all reasonable expenses of transportation, meals, and lodging incident to reporting for the examination, together with one day of temporary disability indemnity for each day of wages lost in submitting to the examination." (§ 4600, subd. (e)(1).)[5] The costs and expenses incurred incidental to the production of a medical report to prove or disprove a contested claim are medical-legal expenses. (§ 4620, subd. (a).) There is no requirement that an employee be disabled in order to qualify for medical-legal benefits. There need not even be a finding of an industrial injury for the worker to qualify for these benefits, as even "an unsuccessful claimant for workers' compensation benefits may recover medical-legal costs." (*Public Employees' Retirement System v. Workers' Comp. Appeals Bd.* (1978) 87 Cal.App.3d 215, 223 [151 Cal.Rptr. 35]; see *Perrillo v. Picco & Presley* (2007) 157 Cal.App.4th 914, 931 [70 Cal.Rptr.3d 29].) Medical-legal expenses are distinct from temporary disability indemnity benefits. (See *Avalon Bay Foods v. Workers' Comp. Appeals Bd.* (1998) 18 Cal.4th 1165, 1175–1178 [77 Cal.Rptr.2d 552, 959 P.2d 1228] (*Avalon*).) Medical-legal expenses are litigation expenses for the purpose of resolving a contested claim, not substitute wages during a period of incapacity. (*American Psychometric Consultants, Inc. v. Workers' Comp. Appeals Bd.* (1995) 36 Cal.App.4th 1626, 1631, fn. 1 [43 Cal.Rptr.2d 254]; *Livitsanos, supra,* 2 Cal.4th at p. 753; *Gamble, supra,* 143 Cal.App.4th at p. 79.)

■ In light of the above authorities, we are convinced the benefit provided in section 4600, subdivision (e)(1) clearly is not a temporary disability benefit that triggers the cap under section 4656. It is a medical-legal benefit intended to permit the injured worker to recover costs associated with resolving a claim.

The Supreme Court's discussion in *Lauher* supports this conclusion. In *Lauher*, the injured worker attempted to use section 4600, subdivision (e)(1) to recover expenses related to medical treatment for an injury that had been

---

[5] The language of the statute resolves the concerns of Zurich and the WCJ regarding the risk of a double temporary disability payment when the injured worker is off work and receiving temporary disability indemnity. The statute requires reimbursement for "each day of *wages lost* in submitting to the examination." (§ 4600, subd. (e)(1), italics added.) If at the time of the examination a worker is receiving temporary disability indemnity because he or she is unable to work, the worker will not suffer lost wages from attending the examination. Accordingly, in those circumstances there will be no obligation to pay this medical-legal expense.

declared permanent and stationary. (*Lauher, supra*, 30 Cal.4th at p. 1287.) Medical treatment benefits are a separate class of benefits from both disability payments and medical-legal expenses. (*Avalon, supra*, 18 Cal.4th at pp. 1175–1178.) The Supreme Court rejected Lauher's claim, noting the temporary disability benefit in section 4600, subdivision (e)(1) "is not a broad obligation to pay [temporary disability indemnity] to replace an employee's wages for time away from work while pursuing medical treatment for a permanent and stationary injury. Rather, *this benefit is in the nature of a medical-legal benefit, reimbursing the employee for his time when requested to submit to a medical examination to resolve a compensation claim.*" (*Lauher, supra*, 30 Cal.4th at pp. 1294–1295, italics added.)

Moreover, this conclusion is consistent with our obligation to liberally construe the statutes in favor of granting benefits to injured workers. If we were to interpret the statutes as petitioner would have us do, the temporary disability limitations period on many cases would start whenever the employee attended a requested medical-legal evaluation, irrespective of whether or not the injured worker required time off work due to the injury. This would seriously disadvantage a worker in a case such as this one, where the injured worker continues to work through injury and does not suffer an incapacity to work until much later in the process. In addition, such a conclusion would permit the employer or insurer to artificially trigger the cap period on temporary disability benefits by setting a medical-legal evaluation. This cannot have been the Legislature's purpose.

■ The payment made to Najjar for attending the qualified medical evaluation was not a disability benefit paid under section 4656, subdivision (c)(1), intended to compensate him for his injury-related incapacity to work. It was a medical-legal benefit, paid under section 4600, subdivision (e)(1), intended to reimburse Najjar for wages lost incidental to the production of a medical-legal report to resolve a contested claim. The rate of the payment is set at the rate of temporary disability benefits. Zurich's effort to bring the payment under section 4600, subdivision (e)(1) within the limitations of section 4656, subdivision (c)(1) stretches the meaning of "unable to work due to injury" too far. Najjar was not incapable of working due to his injury; he was unable to attend work because he had a scheduling conflict related to a medical examination needed to prove or disprove his injury claim. Accordingly, the section 4656, subdivision (c)(1) cap on temporary disability was not triggered by the September 2007 payment under section 4600, subdivision (e)(1).

## DISPOSITION

The WCAB's order granting reconsideration and decision after reconsideration is affirmed. Each party shall bear its own costs in this original proceeding.

Hull, J., and Robie, J., concurred.