Filed 9/5/19; Certified for Publication 9/16/19 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| RENEE SKELTON,<br><br>    Petitioner,<br><br>    v.<br><br>WORKERS' COMPENSATION<br>APPEALS BOARD et al.,<br><br>    Respondents. | H046249<br>(W.C.A.B. Nos. ADJ10307625,<br>ADJ10307786) |

## I. INTRODUCTION

Petitioner Renee Skelton petitions for review of a determination by respondent Workers' Compensation Appeals Board (WCAB or the Board) that she is not entitled to receive temporary disability indemnity (TDI) for time lost from work to attend appointments for medical treatment following her return to work. For the reasons stated below, we will affirm the WCAB's decision.

## II. BACKGROUND

Skelton sustained an injury to her ankle in July 2012, and an injury to her shoulder in July 2014, while working for respondent Department of Motor Vehicles (DMV). In the latter incident, she also claimed to have sustained an injury to her neck. Skelton filed separate applications for workers' compensation benefits for her injuries.

(ADJ10307625, ADJ10307786.) The DMV's adjusting agency was State Compensation Insurance Fund (SCIF).

The parties disputed whether Skelton was entitled to TDI for wage loss for time missed at work to attend medical appointments. Skelton sought to be reimbursed for her wage loss for time missed at work for medical treatment and for medical evaluations. SCIF contended that under *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* (2003) 30 Cal.4th 1281 (*Department of Rehabilitation*), Skelton was not entitled to TDI to compensate her for taking time off from work for medical treatment, but it acknowledged that Skelton was entitled to compensation for wage loss for attending medical-legal evaluations.

A hearing on Skelton's two cases was held before the workers' compensation judge (WCJ) on May 1, 2018. Without objection by the DMV, Skelton made the following offer of proof. Skelton continued working after each injury and, based on her work restrictions, was placed on modified work in approximately May 2017. She missed work to attend appointments with her treating physicians and to attend two visits with the panel qualified medical evaluator (QME). Skelton's work hours were not flexible, and she could not visit her doctors on weekends. She initially used her sick and vacation leave, but eventually her paycheck was reduced for missed time at work. She was then "forced to miss doctors' appointments because [she could not] afford to attend." Skelton's shoulder injury was found permanent and stationary on November 30, 2017. Her ankle injury was not yet permanent and stationary at the time of the hearing.

The parties stipulated at the hearing that DMV records would be filed within 20 days showing Skelton's use of sick and vacation leave relevant to the issue of wage loss to attend medical appointments. The parties further stipulated that the documents would "be received into evidence 10 days after receipt of [them], there being no

2

objections." The record reflects that Skelton's time sheets from the DMV were filed on May 9, 2018.[1]

In a posttrial brief, Skelton contended that under *Department of Rehabilitation*, an employee is entitled to TDI unless the employee has returned to work *and* the employee's injury is permanent and stationary. Because her injury was not permanent and stationary, Skelton argued that she was entitled to compensation, including "full reimbursement of sick and vacation time used," for time spent attending medical treatment with her treating physicians and medical evaluations with the QME.

The WCJ issued a joint findings and order, concluding that Skelton was not entitled to TDI to attend medical treatment based on *Department of Rehabilitation*.

Skelton petitioned for reconsideration, arguing that she was entitled to TDI for all medical appointments after she exhausted her sick and vacation credits and until she was declared permanent and stationary. She contended that, after returning to work full time with restrictions, she had to attend appointments with her primary doctors and the QME. Skelton missed work to attend the appointments, and her paycheck was being reduced because she had exhausted her sick and vacation leave. She could no longer afford to attend medical appointments. Skelton argued that denying reimbursement for lost time could in effect preclude her from receiving medical treatment, contrary to the intent of the workers' compensation system.

In an answer to the petition for reconsideration, SCIF, on behalf of the DMV, contended that Skelton was not entitled to TDI under *Department of Rehabilitation* because she had returned to work, and therefore the WCJ's findings and order should be sustained.

---

[1] In a later report and recommendation on petition for reconsideration, the WCJ appears to have mistakenly stated that "no records from the DMV were filed."

In his report and recommendation on the petition, the WCJ stated that under Labor Code section 4600, subdivision (e)(1),[2] an employee who attends a medical-legal evaluation, but not an appointment for medical treatment, is entitled to receive one day of TDI for each day of wage loss in submitting to the evaluation. The WCJ acknowledged that he did not make a finding on Skelton's loss of time to attend the QME evaluations. The WCJ stated, however, that the parties did not provide any earnings information or documentation showing actual wage loss to attend the QME evaluations. If Skelton incurred actual wage loss to attend the evaluations by the QME, then she was entitled to receive TDI. The WCJ stated that the petition for reconsideration should be granted for the limited purpose of making a general award of one day of TDI for each day of wage loss Skelton incurred to attend the two QME evaluations, subject to adjustment by the parties as to the amount, if any, of wage loss actually incurred by Skelton to attend those evaluations, and without regard to any vacation or sick leave used by Skelton. The WCJ reiterated that Skelton was not entitled to TDI for wage loss to attend medical treatment appointments following her return to work, and therefore the petition for reconsideration should be denied in that regard.

In its opinion and order granting reconsideration and decision after reconsideration, a majority of the WCAB adopted the reasons stated in the WCJ's report. The majority stated that Skelton was entitled to TDI for wage loss to attend medical-legal evaluations, but that based on *Department of Rehabilitation* and *Ward v. Workers' Compensation Appeals Bd.* (2004) 69 Cal.Comp.Cases 1179 (*Ward*) [writ denied], she was not entitled to TDI for wage loss to attend medical treatment following her return to work.

The dissent believed that Skelton was entitled to TDI for wage loss for attending medical-legal evaluations, as well as for attending necessary medical treatment. The

_____

[2] All further statutory references are to the Labor Code.

4

dissent observed that TDI provides wage replacement assistance while the injured worker is healing. The dissent reasoned that an injured worker who is receiving medical treatment in order to achieve permanent and stationary status is still healing, regardless of whether he or she has returned to work. According to the dissent, when injured workers are "receiving necessary medical treatment during their healing period *and* experiencing wage loss, they should be compensated." The dissent believed that contrary language in *Department of Rehabilitation* was dicta, as the worker's injury in that case was already permanent and stationary.

## III. DISCUSSION

### A. *The Parties' Contentions*

Skelton contends that although she has returned to work full time, she still suffers from an injury that is not permanent and stationary. Under these circumstances, she argues that she is entitled to TDI for wage loss to attend appointments for medical treatment.

The DMV and SCIF contend that once Skelton returned to work full time, she was not entitled to TDI for attending medical treatment appointments. The DMV and SCIF also argue that the issue is "moot" because Skelton's wage loss occurred after her shoulder injury became permanent and stationary, and more than five years after the date of her ankle injury (see § 4656, subd. (c)(2)).[3]

Because we conclude that Skelton was not entitled to TDI after she returned to work full time, we do not reach the other issues raised by the DMV and SCIF.

---

[3] Section 4656, subdivision (c)(2) states: "Aggregate disability payments for a single injury occurring on or after January 1, 2008, causing temporary disability shall not extend for more than 104 compensable weeks *within a period of five years from the date of injury*." (Italics added.)

**B.** *The Standard of Review*

Our review of a WCAB decision is limited. "As to findings of fact, we defer to the Board's findings if supported by substantial evidence. [Citations.] While we accord ' "significant respect" ' to the Board's interpretation of statutes in the area of workers' compensation [citation], we subject the Board's conclusions of law to de novo review [citations]." (*Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1290.)

With the standard of review in mind, we recognize that "issues of compensation for injured workers 'shall be liberally construed by the courts with the purpose of extending their benefits for the protection of persons injured in the course of their employment.' " (*Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1290, quoting § 3202.) "Even a liberal interpretation, however, will not extend temporary disability benefits where they are not authorized. [Citation.]" (*Signature Fruit Co. v. Workers' Comp. Appeals Bd.* (2006) 142 Cal.App.4th 790, 795 (*Signature Fruit*).)

**C.** *General Principles Regarding Temporary Disability Indemnity*

A disability in the workers' compensation context connotes an inability to work. (*Herrera v. Workers' Comp. Appeals Bd.* (1969) 71 Cal.2d 254, 257.) In the workers' compensation context, a disability "is a composite of two principal elements that, although distinct, generally coincide in greater or lesser degree but need not necessarily do so, i.e., (1) actual incapacity to perform the tasks usually encountered in one's employment and the wage loss resulting therefrom, and (2) physical impairment of the body that may or may not be incapacitating." (*Allied Compensation Ins. Co. v. Industrial Acc. Com.* (1963) 211 Cal.App.2d 821, 831.)

"Temporary disability is incapacity to work that is reasonably expected to be cured or materially improved with proper medical treatment. [Citations.]" (*Chavira v. Workers' Comp. Appeals Bd.* (1991) 235 Cal.App.3d 463, 473.) In contrast, "[a] disability is considered permanent when the employee has reached maximal medical improvement, meaning his or her condition is well stabilized, and unlikely to change

6

substantially in the next year with or without medical treatment." (Cal. Code Regs., tit. 8, § 10152.) "Temporary disability may be total (incapable of performing any kind of work), or partial (capable of performing some kind of work). [Citation.]" (*Huston v. Workers' Comp. Appeals Bd.* (1979) 95 Cal.App.3d 856, 868, italics omitted (*Huston*).)

"Two of the types of benefits available to the worker injured on the job are temporary disability indemnity, or TDI, and permanent disability indemnity, or PDI. Although both take the form of financial benefits, '. . . temporary disability indemnity and permanent disability indemnity were intended by the Legislature to serve entirely different functions. Temporary disability indemnity serves as wage replacement during the injured worker's healing period for the industrial injury. [Citation.] In contrast, permanent disability indemnity compensates for the residual handicap and/or impairment of function after maximum recovery from the effects of the industrial injury have been attained. [Citation.] Permanent disability serves to assist the injured worker in his [or her] adjustment in returning to the labor market. [Citation.]' [Citations.]" (*Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1291.)

"In general, temporary disability indemnity is payable during the injured worker's healing period from the injury until the worker has recovered sufficiently to return to work, or until his/her condition reaches a permanent and stationary status. [Citation.]" (*Huston*, *supra*, 95 Cal.App.3d at p. 868.) "The purpose of temporary disability indemnity is to provide interim wage replacement assistance to an injured worker during the period of time he or she is healing and *incapable* of working. [Citations.]" (*Meeks Building Center v. Workers' Comp. Appeals Bd.* (2012) 207 Cal.App.4th 219, 224, italics added (*Meeks*); see *Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1291.) "The employer's obligation to pay temporary disability benefits is tied to the employee's '*actual incapacity* to perform the tasks usually encountered in one's employment and the wage loss resulting therefrom.' [Citation.]" (*Meeks*, *supra*, at p. 224, italics added, fn. omitted; accord, *Livitsanos v. Superior Court* (1992) 2 Cal.4th 744, 753 (*Livitsanos*)

7

[temporary disability benefits "are a substitute for lost wages during a period of temporary incapacity from working"]; *Signature Fruit*, *supra*, 142 Cal.App.4th at p. 795 ["temporary disability is intended as a substitute for lost wages during a period of transitory incapacity to work"].)  The duty to pay TDI "continues during the period in which an injured worker, *while unable to work*, is undergoing medical diagnostic procedure and treatment for an industrial injury.  [Citation.]"  (*J.C. Penney Co. v. Workers' Comp. Appeals Bd.* (2009) 175 Cal.App.4th 818, 824, italics added (*J.C. Penney*); accord, *Braewood Convalescent Hospital v. Workers' Comp. Appeals Bd.* (1983) 34 Cal.3d 159, 168 (*Braewood*).)

"That TDI is intended as wage replacement is inferable from section 4653, which requires temporary total disability be calculated as 'two-thirds of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market.'  Because '[t]emporary disability indemnity is intended primarily to substitute for the worker's lost wages, in order to maintain a steady stream of income' [citations], an employer's obligation to pay TDI to an injured worker ceases when such replacement income is no longer needed.  Thus, the obligation to pay TDI ends when the injured employee either returns to work [citations] or is deemed able to return to work [citation], or when the employee's medical condition achieves permanent and stationary status [citations]."  (*Department of Rehabilitation*, *supra*, 30 Cal.4th at pp. 1291-1292.)

Regarding the amount of the disability payment, "[i]f the injury causes temporary *total* disability, the disability payment is two-thirds of the average weekly earnings during the period of such disability, consideration being given to the ability of the injured employee to compete in an open labor market."  (§ 4653, italics added.)  "If the injury causes temporary *partial* disability, the disability payment is two-thirds of the weekly loss in wages during the period of such disability."  (§ 4654, italics added; see also § 4657 [defining "weekly loss in wages"].)

8

Significantly, "our system of workers' compensation does not provide a make-whole remedy. 'The Workers' Compensation Law is intended to award compensation for *disability* incurred in employment. "The purpose of the award is not to make the employee whole for the loss which he [or she] has suffered but to prevent [the employee] and his [or her] dependents from becoming public charges during the period of [the employee's] disability." ' [Citation.] 'The purpose of [workers'] compensation is to rehabilitate, not to indemnify, and its intent is limited to assuring the injured [worker] subsistence while he [or she] is unable to work and to effectuate his [or her] speedy rehabilitation and reentry into the labor market.' [Citation.] Consistent with this view, for example, section 4653 provides that payment for temporary total disability is only 'two-thirds of the average weekly earnings during the period of such disability.' " (*Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1300.)

### D. *Department of Rehabilitation v. Workers' Comp. Appeals Bd.* **(2003)**
### **30 Cal.4th 1281**

In *Department of Rehabilitation*, the California Supreme Court addressed whether an employee who had suffered an industrial injury was entitled to TDI to compensate the employee for taking time off from work for continuing medical treatment. (*Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1286.) The employee had returned to work after a determination that his injury was permanent and stationary. (*Id.* at pp. 1286, 1292.) The California Supreme Court concluded that the employee was *not* entitled to TDI under the circumstances. (*Id.* at p. 1286.) The court explained that the employee "had passed out of the healing period (for which TDI serves as a wage replacement) and had agreed to a stipulation compensating him for his diminished ability in the workplace due to a permanent and stationary injury. Because [the employee] had begun collecting PDI, he was no longer entitled to TDI." (*Id.* at pp. 1292-1293.)

The California Supreme Court rejected the employee's argument that there was a " 'chilling effect on the injured workers' ability to obtain medical treatment' " if the

9

injured worker loses wages from attending necessary treatment. (*Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1294.) The court explained that "although TDI is intended as a wage replacement while the injured worker is healing from his [or her] injury, once the injury becomes permanent and stationary and/or the employee returns to work, any future benefits authorized by the workers' compensation scheme are not intended as wage replacement." (*Ibid*.) The court observed that the employee "is provided medical benefits . . . during the healing period in order to enable him [or her] to return to productive employment and to prevent him [or her] from becoming a public charge. Once [the employee] returns to work, in addition to the wages he [or she] earns, [the employee] is also compensated in the form of PDI for the permanent diminution of his [or her] abilities caused by his [or her] industrial injuries. The system of workers' compensation is not intended to provide full and total recompense for any and all consequences of a worker's injury, but instead represents a compromise between the interests of workers and those of employers. . . . ' "[I]n compensation practice day in and day out employees are totally uncompensated for wages lost while attending to medical treatment during their work day. It has long been considered that in exchange for that blanket coverage of compensation without regard to fault, the employee bears some of the burden." ' " (*Ibid*.) Moreover, presumably "employees with nonindustrial injuries must follow the same rule and use their sick leave when away from the office attending medical treatment." (*Id.* at p. 1301.)

The WCAB has interpreted *Department of Rehabilitation* to preclude TDI for work missed to attend medical appointments for an employee who has returned to work full time, regardless of whether the employee's injury is permanent and stationary. The WCAB has reasoned that an employee, by returning to work full time, no longer suffers from a wage loss coupled with an incapacity to work. Rather, the employee has restored his or her earning capacity, which eliminates the income replacement rationale underlying TDI. (*Ward*, *supra*, 69 Cal.Comp.Cases at p. 1182 [writ denied]; see *Smith v.*

10

*Workers' Comp. Appeals Bd.* (2000) 79 Cal.App.4th 530, 537, fn. 2 [writ-denied summaries of decisions by the WCAB may be cited to show the "the contemporaneous interpretation and application of the workers' compensation laws by the" WCAB, but "have no stare decisis effect in an appellate court"].)

### E. *Lost Wages for Requested Medical Examinations*

In contrast, if an employee is requested to submit to a medical examination to resolve a compensation claim, and the request is by the employer, the employer's insurer, or another statutorily specified entity, then under section 4600 the employee is entitled to "one day of temporary disability indemnity for each day of wages lost in submitting to the examination." (§ 4600, subd. (e)(1); see *Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1294.) However, "this benefit is in the nature of a medical-legal benefit, reimbursing the employee for his [or her] time when requested to submit to a medical examination to resolve a compensation claim." (*Department of Rehabilitation*, *supra*, at p. 1295; see § 4620, subd. (a).) "Medical-legal expenses are distinct from temporary disability indemnity benefits. [Citation.]" (*Meeks*, *supra*, 207 Cal.App.4th at p. 226.) Unlike TDI, "[t]here is no requirement that an employee be disabled in order to qualify for medical-legal benefits. There need not even be a finding of an industrial injury for the worker to qualify for these benefits, as even 'an unsuccessful claimant for workers' compensation benefits may recover medical-legal costs.' [Citations.] . . . Medical-legal expenses are litigation expenses for the purpose of resolving a contested claim, not substitute wages during a period of incapacity. [Citations.]" (*Ibid*.)

### F. *Analysis*

We determine that Skelton is not entitled to TDI for wage loss arising from her time off from work to attend appointments for medical treatment. The DMV's "obligation to pay temporary disability benefits is tied to [Skelton's] '*actual incapacity* to perform the tasks usually encountered in [her] employment and the wage loss resulting therefrom.' [Citation.]" (*Meeks*, *supra*, 207 Cal.App.4th at p. 224, italics added,

11

fn. omitted; accord, *Livitsanos*, *supra*, 2 Cal.4th at p. 753 [temporary disability benefits "are a substitute for lost wages during a period of temporary incapacity from working"]; *Signature Fruit*, *supra*, 142 Cal.App.4th at p. 795 ["temporary disability is intended as a substitute for lost wages during a period of transitory incapacity to work"]; see *Braewood*, *supra*, 34 Cal.3d at p. 168 [employer has a duty to pay temporary disability compensation while the injured employee is "unable to work" ]; *J.C. Penney*, *supra*, 175 Cal.App.4th at p. 824 [same].)  Once Skelton recovered sufficiently to return to work full time, she was no longer entitled to TDI.  (*Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1292; *Huston*, *supra*, 95 Cal.App.3d at p. 868.)  In this case, Skelton admits that she returned to work full time after her injuries.  She subsequently took time off from work because she could not schedule medical treatment during nonwork hours.  She apparently began to suffer wage loss after using all her sick and vacation time.  Neither Skelton's time off from work nor her wage loss was due to an *incapacity* to work.  Rather, these circumstances were due to scheduling issues and her employer's leave policy.  Because Skelton's injuries did not render her incapable of working during the time she took off from work and suffered wage loss, Skelton was not entitled to TDI for that time off or wage loss.

Skelton contends that once an employee exhausts sick and vacation time, "the burden must shift back to the employer to pay [temporary partial disability benefits] for medical treatment . . . so that both parties share the burden."  Skelton fails to provide persuasive argument or legal authority as to why she is entitled to TDI after exhausting her sick and vacation time in this case.  " ' "[I]n compensation practice day in and day out employees are totally uncompensated for wages lost while attending to medical treatment during their work day." ' "  (*Department of Rehabilitation*, *supra*, 30 Cal.4th at p. 1294.)

# IV. DISPOSITION

The decision after reconsideration is affirmed.

_____
BAMATTRE-MANOUKIAN, J.

WE CONCUR:

_____
ELIA, ACTING P. J.

_____
MIHARA, J.

*Skelton v. Workers' Compensation Appeals Board*
**H046249**

Filed 9/16/19

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT


| | |
|---|---|
| RENEE SKELTON, | H046249 |
| | (W.C.A.B. Nos. ADJ10307625, |
| Petitoner, | ADJ10307786) |
| | |
| v. | ORDER CERTIFYING OPINION |
| | FOR PUBLICATION |
| WORKERS' COMPENSATION | |
| APPEALS BOARD et al., | |
| | |
| Respondents. | |


THE COURT:

     The opinion in the above-entitled matter filed on September 5, 2019, was not
certified for publication in the Official Reports.  Respondents Department of Motor
Vehicles and State Compensation Insurance Fund have requested the opinion be certified
for publication.  Under California Rules of Court, rule 8.1105(c), the opinion is ordered
published.



                                _____
                                BAMATTRE-MANOUKIAN, J.



                                _____
                                ELIA, ACTING P. J.



                                _____
                                MIHARA, J.

Attorneys for Petitioner:          Ian D. McFarren
Renee Skelton                      Russell D. Jacobson
                                   Rucka, O'Boyle, Lombardo & McKenna


Attorney for Respondent:           Allison Jane Fairchild
Workers' Compensation Appeals Board


Attorneys for Respondents:         Joseph Morris Rozowski
Department of Motor Vehicles and State    Lisa Anne Stolzy
Compensation Insurance Fund

*Skelton v. Workers' Compensation Appeals Board*
**H046249**